Angelynn YORK, Appellant,

v.

Ron STORY and Louis Moreno, Appellees.

No. 18280.

United States Court of Appeals Ninth Circuit.

Oct. 28, 1963.

A. L. Wirin and Fred Okrand, Los Angeles, Cal., and Albert J. Fink, Beverly Hills, Cal., for appellant.

Aidlin, Martin & Mamakos, and Bonnie Lee Martin, Los Angeles, Cal., for appellee.

Before HAMLEY and BROWNING, Circuit Judges, and MacBRIDE, District Judge.

HAMLEY, Circuit Judge.

This action was brought by Angelynn York against three officers of the Police Department of the City of Chino, California, to recover damages for taking and distributing photographs of her in the nude. District court jurisdiction was asserted under 28 U.S.C. § 1343(3) and (4) (1958),[1] it being alleged that the claim arises under Rev.Stat. § 1979 (1875), 42 U.S.C. § 1983 (1958).[2] The

---

1. Title 28, § 1343 reads, in pertinent part:
 "The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:
 \* \* \* \* \*
 "(3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States;
 "(4) To recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights, including the right to vote."

2. This provision of the Civil Rights Act was originally enacted as a part of the Civil Rights Act of 1871, § 1, 17 Stat. 13. It was later reënacted, as positive law, as Rev.Stat. § 1979 (1875). It appears in Title 42, U.S.C. as § 1983. But since Title 42, unlike Title 28 and sixteen other titles, has not been enacted into positive law [Preface, U.S.C. (Supp. IV 1963)], it is only "prima facie" evidence of the law. 1 U.S.C. § 204(a) (1958). The references throughout this opinion will therefore be to section 1979, meaning Rev.Stat. § 1979 (1875).
 Rev.Stat. § 1979, 42 U.S.C. § 1983 reads:
 "Every person who, under color of any statute, ordinance, regulation, custom, or

action was dismissed on motion. Plaintiff appeals.[3]

We first state the allegations of the amended complaint. In October, 1958, appellant went to the police department of Chino for the purpose of filing charges in connection with an assault upon her. Appellee Ron Story, an officer of that police department, then acting under color of his authority as such, advised appellant that it was necessary to take photographs of her. Story then took appellant to a room in the police station, locked the door, and directed her to undress, which she did. Story then directed appellant to assume various indecent positions, and photographed her in those positions. These photographs were not made for any lawful or legitimate purpose.

Appellant objected to undressing. She stated to Story that there was no need to take photographs of her in the nude, or in the positions she was directed to take, because the bruises would not show in any photograph. A policewoman was present at the police station but was not requested to be present in the room where the pictures were taken, and was not present. No person except appellant and Story was present in the room when the pictures were taken.

Later that month, Story advised appellant that the pictures did not come out and that he had destroyed them. Instead, Story circulated these photographs among the personnel of the Chino police department. In April, 1960, two other officers of that police department, appellee Louis Moreno and defendant Henry Grote, acting under color of their authority as such, and using police photographic equipment located at the police station made additional prints of the photographs taken by Story. Moreno and Grote then circulated these prints among the personnel of the Chino police department. Appellant did not learn of the described actions of Story, Moreno and Grote in distributing these photographs until December, 1960. The amended complaint closes, save for the prayer, with the two paragraphs quoted in the margin.[4]

In dismissing the action the district court held that the amended complaint did not state a claim under section 1979, and that the court was therefore without jurisdiction to entertain the suit.

The holding of the district court that it lacked jurisdiction must be regarded as surplusage. Under 28 U.S.C. § 1343 (3), a federal district court has jurisdiction, among other things, to entertain a suit to recover damages suffered by reason of the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States. Under 28 U.S.C. § 1343(4), a federal district court has jurisdiction, among other things, to en-

usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

3. Process was not served upon one of the defendants, Henry Grote, and he did not appear in the district court. Consequently Grote is not an appellee here.

4. "V. All of the acts of the defendants aforesaid were as police officers of said Chino Police Department; but were in excess of their authority as such police officers. Said acts violated and deprived plaintiff of her right to privacy and liberty and constituted an unreasonable search and seizure contrary to and prohibited by the Fourth and Fourteenth Amendments to the United States Constitution and the Federal Civil Rights Act.

"VI. The acts of the defendants aforesaid were committed unlawfully, intentionally, maliciously and oppressively, with the knowledge on the part of the defendants that they were exceeding their authority as police officers and with the further knowledge that they were depriving the plaintiff of rights guaranteed to her by the Constitution of the United States and by the Federal Civil Rights Act by virtue whereof the plaintiff is entitled to punitive and exemplary damages."

tertain a suit to recover damages under any act of Congress providing for the protection of civil rights.

In the amended complaint appellant, specifically invoking these subsections as a basis for jurisdiction, attempted to state a claim under section 1979. This was enough to establish district court jurisdiction, whether or not appellant succeeded in stating such a claim.

Where, as here, the Constitution and laws of the United States, if given the meaning ascribed to them by the plaintiff, establish a claim for relief in the federal courts on the basis of the facts alleged, the problem of determining whether the Constitution and laws have that meaning presents not a jurisdictional question but only one as to the sufficiency of the pleading to state a claim.[5] The court in fact assumed jurisdiction when it decided, on the merits, that the amended complaint did not state a claim under section 1979.

 The only question before us, therefore, is whether the district court erred in holding that the amended complaint did not state a claim under section 1979. In determining that question due regard must be had for the accepted rule that a complaint is not subject to dismissal on the ground that there is a failure to state a claim upon which relief can be granted, "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101, 102, 2 L.Ed.2d 80. This rule is applicable in civil rights actions. Marshall v. Sawyer, 9 Cir., 301 F.2d 639, 647; Cohen v. Norris, 9 Cir., 300 F.2d 24, 31.

 A complaint states a claim under section 1979, if the facts alleged show that the defendant: (1) while acting under color of state or local authority, (2) subjected the plaintiff, or caused the plaintiff to be subjected, to the depriva-

tion of any rights, privileges or immunities secured to the plaintiff by the Constitution and laws of the United States. Marshall v. Sawyer, at page 646; Cohen v. Norris, at page 30.

The facts alleged in a complaint are sufficient with regard to the first of these elements if they lay a groundwork for proof that, at the time in question, the defendant was clothed with the authority of state or local government and was purporting to act thereunder. Screws v. United States, 325 U.S. 91, 111, 65 S.Ct. 1031, 89 L.Ed. 1495; Marshall v. Sawyer, 301 F.2d at page 646.

As a foundation for proving that appellees were at the relevant times, clothed with such authority, it was alleged that they were then police officers of the City of Chino. As a foundation for proving that, in performing the acts complained of, appellees were purporting to act under such authority, it was alleged that all such acts were performed at the police station, police equipment was used, the initial photographing was done in purported processing of a complaint appellant had made to the police, and the distribution of the photographs was to other members of the police department. There was also the general allegation, quoted in note 3, that "(a)ll of the acts of the defendants were as police officers of said Chino Police Department. * * *"

It does not appear to us beyond doubt that appellant cannot, under these allegations, prove a set of facts establishing that, at the times in question, appellees were clothed with the authority of local government and that, in performing the acts complained of, they were purporting to act under such authority. It follows, to apply the rule recognized in Conley v. Gibson, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80, that the amended complaint was not subject to dismissal on the ground that it fails to allege facts showing that appellees were acting under color of local authority.

5. See Wheeldin v. Wheeler, 373 U.S. 647, 649, 83 S.Ct. 1441, 10 L.Ed.2d 605; Bell v. Hood, 327 U.S. 678, 682, 685, 66 S.Ct. 773, 90 L.Ed. 939; Harmon v. Superior Court, 9 Cir., 307 F.2d 796, 798.

Our view in this regard apparently accords with that of the district court, since the amended complaint was not dismissed on the ground of failure to allege that appellees were acting under color of local authority. It is also to be noted that appellees do not contend that the amended complaint is deficient as to this ingredient of a civil rights action.[6] It hardly need be added that the question of whether appellant can prove that appellees were clothed with local authority, and were purporting to act pursuant thereto in doing the things complained of, does not concern us now.

The district court's determination that this pleading does not state a claim under section 1979 rests solely upon the ground that, under the allegations of the amended complaint, appellant had not been deprived of any federally-protected right.

Contending that the district court erred in this regard, appellant advances alternative arguments, as follows: (1) under the facts alleged there was an unreasonable search within the meaning of the Fourth Amendment [7] and since the guarantee against unreasonable searches and seizures contained in the Fourth Amendment has been made applicable to the states by reason of the Due Process Clause of the Fourteenth Amendment,[8] she was protected from such a search at the hands of city police officers; (2) the Fourth Amendment is premised upon a basic right of privacy, made available to appellant as against city police officers by reason of the Due Process Clause of the Fourteenth Amendment, which right was violated without regard to whether such violation constituted an unreasonable search in the Fourth Amendment sense; and (3) the alleged acts of appellees constituted such an invasion of appellant's privacy as to amount to a deprivation of liberty, without due process of law, as guaranteed to her by the Due Process Clause of the Fourteenth Amendment.

The alleged act of Story in taking photographs of appellant in the nude, if proved, may or may not constitute an unreasonable search in the Fourth Amendment sense. But if we should hold that it does, this would not dispose of the whole case for the alleged subsequent acts of Story and Moreno in distributing prints of these photographs, of which appellant also complains, could hardly be characterized as unreasonable searches.

It is therefore necessary, in any event, to reach appellant's second or third argument, or both, relating to invasions of privacy. Accordingly, we turn at once to appellant's third contention—that all of these acts constituted such invasions of her privacy as to amount to deprivations of liberty without due process of law, guaranteed to her by the Due Process Clause of the Fourteenth Amendment.

We are not called upon to decide as an original proposition whether "privacy,"

---

6. Far from questioning the sufficiency of the complaint on this ground, appellees in effect argue that the evidence will support the allegation that appellees were acting under color of local authority. Concerning the taking of the photographs, appellees state, in their brief:

"The taking of photographs was not an invasion of privacy but only an attempt to preserve evidence which Appellees, as police officers, are authorized to do and which was done with the implied consent and cooperation of Appellant."

Concerning the distribution of the photographs, appellees state in their brief:

"Since the photographs were lawfully obtained, it was not improper for au-

thorized personnel to review or discuss them."

7. The Fourth Amendment reads:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

8. The Due Process Clause of the Fourteenth Amendment reads:

" * * * nor shall any State deprive any person of life, liberty, or property, without due process of law; * * *."

as such, is comprehended within the "liberty" of which one may not be deprived without due process of law, as used in the Due Process Clause of the Fourteenth Amendment.[9] For it has already been declared by the Supreme Court that the security of one's privacy against arbitrary intrusion by the police is basic to a free society and is therefore "implicit in the concept of ordered liberty," embraced within the Due Process Clause of the Fourteenth Amendment.[10]

What we must decide, however, is whether the acts of the police, as here alleged, constitute an arbitrary invasion upon the security of one's privacy in this Due Process sense.

We cannot conceive of a more basic subject of privacy than the naked body. The desire to shield one's unclothed figured from view of strangers, and particularly strangers of the opposite sex, is impelled by elementary self-respect and personal dignity. A search of one's home has been established to be an invasion of one's privacy against intrusion by the police, which, if "unreasonable," is arbitrary and therefore banned under the Fourth Amendment.[11] We do not see how it can be argued that the searching of one's home deprives him of privacy, but the photographing of one's nude body, and the distribution of such photographs to strangers does not.

Nor can we imagine a more arbitrary police intrusion upon the security of that privacy than for a male police officer to unnecessarily photograph the nude body of a female citizen who has made complaint of an assault upon her, over her protest that the photographs would show no injuries, and at a time when a female police officer could have been, but was not, called in for this purpose, and to distribute those photographs to other personnel of the police department despite the fact that such distribution of the photographs could not have aided in apprehending the person who perpetrated the assault.

But granting all of that, must it still be held that the particular intrusions here alleged are not secured against by the Due Process Clause of the Fourteenth Amendment because they are not expressly proscribed in the Bill of Rights?

We think not. In the field of civil rights litigation the cases are not infrequent in which law enforcement action not banned in terms by any provision of

9. Perhaps no more complete description of what is included in the term "liberty" can be found than is expressed in Meyer v. Nebraska, 262 U.S. 390, 399, 43 S.Ct. 625, 626, 67 L.Ed. 1042, where the Court said:

"While this Court has not attempted to define with exactness the liberty thus guaranteed, the term has received much consideration and some of the included things have been definitely stated. Without doubt, it denotes not merely freedom from bodily restraint but also the right of the individual to contract, to engage in any of the common occupations of life, to acquire useful knowledge, to marry, establish a home and bring up children, to worship God according to the dictates of his own conscience, and generally to enjoy those privileges long recognized at common law as essential to the orderly pursuit of happiness by free men."

10. This declaration was first made in Wolf v. Colorado, 338 U.S. 25, 27, 69 S.Ct. 1359, 93 L.Ed. 1782. See, also, Ker v. California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726; Mapp v. Ohio, 367 U.S. 643, 650, 81 S.Ct. 1684, 6 L.Ed.2d 1081; Frank v. Maryland, 359 U.S. 360, 366–367, 79 S.Ct. 804, 3 L.Ed.2d 877. For other expressions to the effect that the Due Process Clause of the Fourteenth Amendment exacts from the states all that is implicit in the concept of ordered liberty, see Rochin v. California, 342 U.S. 165, 169, 72 S.Ct. 205, 96 L.Ed. 183; Palko v. Connecticut, 302 U.S. 319, 325, 58 S.Ct. 149, 82 L.Ed. 288; Snyder v. Massachusetts, 291 U.S. 97, 105, 54 S. Ct. 330, 78 L.Ed. 674; Twining v. New Jersey, 211 U.S. 78, 106, 29 S.Ct. 14, 53 L.Ed. 97.

11. Mapp v. Ohio, 367 U.S. 643, 656, 81 S. Ct. 1684, 6 L.Ed.2d 1081. See, also, Frank v. Maryland, 359 U.S. 360, 362, 79 S.Ct. 804, 3 L.Ed.2d 877; Stefanelli v. Minard, 342 U.S. 117, 119, 72 S.Ct. 118, 96 L.Ed. 138; Weeks v. United States, 232 U.S. 383, 391, 34 S.Ct. 341, 58 L.Ed. 652; Boyd v. United States, 116 U.S. 616, 622, 6 S.Ct. 524, 29 L.Ed. 746.

the Bill of Rights has been made the subject of a successful claim.[12]

All of the cases just cited involved persons who were in police custody at the time of the incident complained of. This circumstance, however, is indicative only of the infrequency of a case such as this, in which one not in custody is the alleged victim of arbitrary police action. No statute, decision or principle that we know of makes the Civil Rights Act available to those in the toils of the law, but closes the federal courthouse to law-abiding citizens who have suffered just as grievous a deprivation of constitutional rights.

This case is novel not only in the respect just mentioned, but also with regard to the precise nature of the arbitrary police action complained of. But, as Justice Brandeis, dissenting in Olmstead v. United States, 277 U.S. 438, 472, 48 S.Ct. 564, 570, 72 L.Ed. 944, long ago made clear, the Constitution is capable of meeting new problems.[13]

The fact that this is the first such case to reach a court of appeals indicates that civil rights actions of this kind are not likely to swamp the federal courts. But, in any event, as we said in Cohen v. Norris, 9 Cir., 300 F.2d 24, 34, in commenting upon the fear expressed in Hardwick v. Hurley, 7 Cir., 289 F.2d 529, 530, that the decision in Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492, "may well open the flood gates," if giving effect to the Congressional intent manifested in section 1979 will "open the flood gates," the remedy, if one is needed, is not for this court, but for Congress, to prescribe. It is no legitimate concern of ours whether a decision, correct under present law, will add to the work load of the courts.

■ Appellees assert that appellant has a civil remedy in the courts of California. But it is immaterial, insofar as the right to pursue remedies under the Civil Rights Act is concerned, that state remedies may also be available. McNeese v. Board of Education, 373 U.S. 668, 671, 83 S.Ct. 1433, 10 L.Ed.2d 622.[14]

■ We therefore conclude that, under the allegations of the amended complaint, appellant has laid a foundation for proving, if she can, not only that appellees were acting under color of local authority at the times in question, but that such acts constituted an arbitrary intrusion upon the security of her privacy, as guaranteed to her by the Due Process Clause of the Fourteenth Amendment. It was therefore error to dismiss the action on the ground that the amended complaint did not state a claim upon which relief can be granted.

The judgment is reversed and the cause is remanded for further proceedings.

MacBRIDE, District Judge.

I respectfully dissent. I believe that the facts alleged are insufficient to establish a violation of appellant's constitu-

---

12. Assaults by police officers upon persons under arrest: Stringer v. Dilger, 10 Cir., 313 F.2d 536; Brazier v. Cherry, 5 Cir., 293 F.2d 401; Hardwick v. Hurley, 7 Cir., 289 F.2d 529; Geach v. Moynahan, 7 Cir., 207 F.2d 714; Koehler v. United States, 5 Cir., 189 F.2d 711. Refusal by police officers to provide necessary medical attention for one held in custody: Hughes v. Noble, 5 Cir., 295 F.2d 495; Koehler v. United States, supra.

13. Justice Brandeis said:
"We have likewise held that general limitations on the powers of Government, like those embodied in the due process clauses of the Fifth and Fourteenth Amendments, do not forbid the United States or the States from meeting modern conditions by regulations which 'a century ago, or even half a century ago, probably would have been rejected as arbitrary and oppressive.' Village of Euclid v. Ambler Realty Co., 272 U.S. 365, 387 [47 S.Ct. 114, 71 L.Ed. 303]; Buck v. Bell, 274 U.S. 200 [47 S.Ct. 584, 71 L.Ed. 1000]. Clauses guaranteeing to the individual protection against specific abuses of power, must have a similar capacity of adaptation to a changing world."

14. To the same effect, see Monroe v. Pape, 365 U.S. 167, 183, 81 S.Ct. 473, 5 L.Ed. 2d 492; Cohen v. Norris, 9 Cir., 300 F.2d 24, 34.

tional rights and, therefore, that they do not state a claim under the Civil Rights Act, 42 U.S.C. § 1983.

In a case involving facts such as those alleged here, the right to privacy is not, and should not be held to be, a constitutional right.

In the first place, the allegations do not establish an unreasonable search and seizure. The Fourth Amendment prohibits unreasonable searches and seizures. Recent Supreme Court cases have established that the Fourth Amendment's prohibition applies to the states through the Fourteenth Amendment. Wolf v. Colorado, 338 U.S. 25, 69 S.Ct. 1359, 93 L.Ed. 1782 (1949); Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed. 2d 1081 (1961); Ker v. California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963). But these cases did not create a broad, new constitutional right to privacy; they merely made the existing right to privacy which is implicit in the Fourth Amendment's prohibition applicable to the states. This prohibition applies primarily to searches for evidence to be used in a criminal prosecution against the person searched. See Frank v. Maryland, 359 U.S. 360, 365–366, 79 S.Ct. 804, 3 L.Ed.2d 877 (1959). But see 359 U.S. 369, 79 S.Ct. 808, 3 L.Ed.2d 877 (dissenting opinion). When an unreasonable invasion of privacy in the home is involved, it may also apply to a search which is unrelated to a criminal prosecution. District of Columbia v. Little, 85 U.S.App.D.C. 242, 178 F.2d 13, 13 A.L.R. 2d 954 (1949). See Frank v. Maryland, supra, 374–384, 79 S.Ct. 812–818 (dissenting opinion).

Since the facts alleged here involve neither criminal proceedings against the appellant nor an invasion of privacy in the home, I cannot hold that they come within the constitutional prohibition against searches and seizures.

Moreover, I cannot agree that, apart from any question of unreasonable search and seizure, the allegations show such an invasion of appellant's privacy as to amount to a deprivation of liberty without due process. In a particular set of facts, there may be a constitutional right to privacy. See Public Utilities Commission v. Pollak, 343 U.S. 451, 467, 72 S.Ct. 813, 96 L.Ed. 1068 (dissenting opinion). See also Pound, The Fourteenth Amendment and the Right of Privacy, 13 Western Res. Law Rev. 34, 54–55. Here, however, the allegations show only that appellant suffered great and unjustified mental suffering, not that any of her basic constitutional rights were prejudiced; and the mere fact that appellant was a complaining witness and the alleged acts of appellees were, to some extent, connected with their official duties as policemen does not, I feel, require a different conclusion.

The present case is different from the ones involving maltreatment of prisoners or persons accused or suspected of crime. Stringer v. Dilger, 313 F.2d 536 (10th Cir. 1963); Hardwick v. Hurley, 289 F.2d 529 (7th Cir. 1961); Hughes v. Noble, 295 F.2d 495 (5th Cir. 1961). Such persons, in effect, occupy a "preferred position." Maltreatment of them is more likely to have constitutional implications than maltreatment of other persons. See Frank v. Maryland, supra, 359 U.S. 365–366, 79 S.Ct. 808, 3 L.Ed. 2d 877. The government has a right to hold prisoners for offenses against it and a corresponding duty to protect such prisoners, while so held, against assault and injury; and the prisoners, in turn, have a *constitutional* right to such protection. Logan v. United States, 144 U.S. 263, 12 S.Ct. 617, 36 L.Ed. 429 (1892.)

When an invasion of privacy is part of, or incident to, an unreasonable search and seizure, it rises to constitutional importance, Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961); District of Columbia v. Little, supra; and when the victim of police misconduct is a prisoner or a person accused or suspected of crime, his right to freedom from such misconduct deserves constitutional protection. Logan v. United States, supra; Stringer v. Dilger, supra; Hardwick v. Hurley, supra; Hughes v. Noble, supra. But in a case involving facts such as

those alleged here, there is no more than a private wrong; and the person aggrieved should be left to his civil remedies in the State Courts. The Civil Rights Act "should be construed so as to respect the proper balance between the States and the federal governments * * *". Stefanelli v. Minard, 342 U.S. 117, 121, 72 S.Ct. 118, 120, 96 L.Ed. 138 (1951).

For the reasons stated, I would affirm the judgment below.