**George GRUMMETT, John Weichman, and Richard Johnson, Plaintiffs,**

**v.**

**Ruth RUSHEN, Director, California Department of Corrections, Reginald L. Pulley, Warden, San Quentin State Prison, Defendants.**

**No. C–82–0563 SW.**

United States District Court, N.D. California.

June 20, 1984.

Michael Satris, Donald Specter, Constance Bakkerud, Prison Law Office, San Quentin, Cal., for plaintiffs.

John K. Van de Kamp, Atty. Gen., State of Cal., Nelson Kempsky, Chief Asst. Atty. Gen., Crim. Div., William D. Stein, Asst. Atty. Gen., Karl S. Mayer, Thomas P. Dove, Deputy Attys. Gen., San Francisco, Cal., for defendants.

## OPINION

SPENCER WILLIAMS, District Judge.

### I. *FACTUAL BACKGROUND*

Plaintiffs, inmates at San Quentin State Prison, brought this class action to obtain a declaration of their rights under 28 U.S.C. Section 2201. They asserted that the prison policy of allowing female correctional officers to view male inmates in states of partial or total nudity while dressing, showering, being strip searched, or using toilet facilities, violates rights of privacy guaranteed by the United States Constitution.

Plaintiffs further assert pendent jurisdiction over claims arising under the California Constitution and California Penal Code.

San Quentin Prison is one of the two highest security institutions in the California correctional system. Assaults and discovery of contraband occur almost daily in this volatile environment. Approximately two-thirds of the 3,000 male prisoners are assigned to administrative segregation units which are the most secure type of housing in the California correctional system. Cells have solid walls at the sides and the rear but bars in the front to permit observation at all times. This is to facilitate discovery of unpermitted acts such as an inmate's manufacture of weapons or secreting of contraband in his rectum. Each cell contains a bunk and toilet. As a security measure inmates leaving or entering the segregated housing units are routinely searched while unclothed. While showering, inmates are observed by correctional staff who are positioned adjacent to the showers or on the gunrails overlooking the shower area. Gradually, over the past few years, the multi-showerhead areas are being replaced with single occupant showers which increase both modesty and control.

Approximately 113 of the 720 correctional officers at San Quentin are female.

Myrna Rodrigues, the Associate Warden for Administration at San Quentin Prison, stated in her declaration that female staff members are *not* assigned to conduct or observe unclothed body searches, to close observation in the shower areas, or to gun posts overseeing the yard area where inmates use exposed shower and toilet facilities. The women are assigned to gunrail positions in the housing unit, to walk by individual cells and glance in, and to the distant gunrail positions in the West Block (gang-style) common showers. This declaration is not challenged. Furthermore, it is not alleged that the female correctional officers have been guilty of making derisive gestures or comments to the male prisoners—or in any way conducting themselves to cause discomfort or embarrassment. San Quentin officials state that inmates must be viewable at all times even while in the shower or on the toilet, to protect against physical attack by other prisoners or the secreting of weapons.

Hence, it is necessary that inmates be seen while in the nude by correctional officers.

The matter came before the court on defendants' motion for dismissal or for summary judgment. Plaintiffs made a counter-motion for summary judgment. Defendants claim that the policies and practices at San Quentin afford male inmates reasonable privacy consistent with the security interests of the institution and equal employment rights of female correctional officers. They also argue that the interests of plaintiffs in a right of privacy does not justify the denial of equal opportunity employment to women.

## II. PRIVACY

In *Bell v. Wolfish*, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447, (1979) pretrial detainees brought suit challenging the constitutionality of numerous prison practices and conditions including visual body cavity searches following contact with visitors. The Supreme Court outlined general principles to be used when evaluating the constitutionality of prison policies and practices which provides this court with an analytical framework for review of the issues before it.

The court said, in essence, that while prisoners do not forfeit all their constitutional rights by virtue of their confinement, certain rights and privileges must necessarily be limited to accommodate the legitimate needs of the institution to, among other things, maintain discipline, operate a correctional program, and protect safety of inmates and correctional officers alike. *See*, also, *Pell v. Procunier* 417 U.S. 817, 822–23, 94 S.Ct. 2800, 2804, 417 L.Ed.2d 495 (1974) and *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). The question here is, of course, whether the admittedly diminished right of privacy of the complaining male prisoners at San Quentin, still carries the right to be free from the rather distant and casual view of female correctional officers.

■ It has been held that "... [The] desire to shield one's unclothed figure from the view of strangers, and particularly strangers of the opposite sex, is impelled by elementary self respect and personal dignity." *York v. Story*, 324 F.2d 450, 455 (9th Cir.1963). Although the court may agree that the viewing of urinating, defecating, or showering by anyone may offend the actor's sensibilities, once such viewing is justified by the prison's need for security, the viewing is not demonstrably more significant, whether performed by male or female. Even so while balancing the need for prison security and attempting to provide equal opportunity for the women, the San Quentin officials have made every reasonable attempt to restrict the viewing of inmates by female correctional officers. In view of San Quentin's extremely volatile situation there is concern that modesty screens in showers or coverings over door cells would also screen violence, or other illegal acts by inmates. The correctional officers must have a view of the inmates actions at all times to prevent violence or the manufacture or secreting of weapons. While the viewing of inmates is essential, it is the court's opinion that the view is restricted as much as can be reasonably done to preserve some modicum of privacy. Administrator's judgments are generally entitled to respect and probable finality. *Wolfish v. Levi*, 439 F.Supp. 114, 124 (S.D.N.Y. 1977).

The situation before us might be generally compared to the tests applied to the use of force to make an arrest. The use of force is, of course, permissible, although the manner and degree of its use may raise constitutional issues, particularly where the use exceeds what is reasonable and necessary, in view of all the surrounding circumstances. In the instant case, it would not be difficult to imagine situations in which the types of assignments given to female correctional officers would be constitutionally impermissive, or the manner in which they carried out permissible assignments would be violative of protected rights. But there appears to this court, at least, that the types of assignments described here, and the manner in which these assignments are performed are total-

ly reasonable, completely discreet, and well within constitutionally permissible conduct.

 In *Bell v. Wolfish, supra,* the court held that visual body cavity searches which were necessary not only to discover but also to deter the smuggling of weapons, drugs, and other contraband into the institution were reasonable searches and therefore, did not violate the Fourth Amendment rights retained both by convicted prisoners and pretrial detainees. If body cavity searches are constitutional, then the visual observation of inmates in states of undress challenged herein must also be reasonable and therefore constitutional. The San Quentin officials have balanced the need for security with equal opportunity and with the prisoners interest in personal privacy. Clearly their actions are reasonable.

## III. EQUAL OPPORTUNITY

 Title VII was meant to remove "artificial, arbitrary and unnecessary barriers to employment when the barriers operate invidiously to discriminate on the basis of racial or other impermissible classification." *Griggs v. Duke Power Co.,* 401 U.S. 424, 431, 91 S.Ct. 849, 853, 28 L.Ed.2d 158 (1971). The Supreme Court in *Dothard v. Rawlinson,* 433 U.S. 321, 333, 97 S.Ct. 2720, 2729, 53 L.Ed.2d 786 (1977), employed a balancing test which weighs Title VII rights against the possibility of disruption of the prison system. The Supreme Court has mandated that the courts and administrative bodies weigh the probabilities of instability. Dr. Lois Shauver, employed as a staff psychologist at the California Medical Facility at Vacaville, California, states in her declaration that female correctional officers working in the housing units of all male prisons have had a softening effect on prison atmosphere making it less volatile. Clearly, the introduction of women has not disrupted order at San Quentin. If anything, their presence contributes to the maintenance of order. The women have a right to equal employment and full opportunity for promotion at San Quentin. In order to rise within the organization female correctional officers must obtain experience in various assignments within the prison. Prison officials have balanced the women's right with the prisoners interest in privacy. The women are assigned to work in the housing units but are restricted from working positions that would require close and direct view of unclad inmates. Before this court denies women their right to equal employment, plaintiffs must allege harm of constitutional dimension. This they have not done.

Accordingly, and for the reasons stated above, plaintiffs' motion for Summary Judgment is hereby DENIED, and defendants' motion for Summary Judgment is hereby GRANTED.

IT IS SO ORDERED.