In the

# United States Court of Appeals

### For the Seventh Circuit

No. 10-1016

MERVIN LEE WOLFE,

*Plaintiff-Appellant,*

*v.*

BARRY SCHAEFER, *et al.,*

*Defendants-Appellees.*

Appeal from the United States District Court
for the Central District of Illinois.
No. 09-3181—**Jeanne E. Scott**, *Judge.*

ARGUED JUNE 9, 2010—DECIDED AUGUST 31, 2010

Before POSNER, WOOD, and HAMILTON, *Circuit Judges.*

POSNER, *Circuit Judge.* The plaintiff, Mervin Wolfe, is a lawyer who in 2008 ran for State's Attorney of Cumberland County, Illinois, and lost. He brought this suit in federal district court against his opponent, Barry Schaefer (the incumbent State's Attorney), and others, under 42 U.S.C. § 1983. The suit charges that they violated the Fourth Amendment and the due process clause of the Fourteenth Amendment by publicly disclosing that Wolfe

was under investigation by Illinois state agencies for possible violations of legal ethics, tax law, and unemployment-insurance law. The judge dismissed the suit. The invocation of the Fourth Amendment is frivolous; of the due process clause, a little bit less so.

Wolfe is the lawyer who, as explained in *Jay E. Hayden Foundation v. First Neighbor Bank, N.A.*, 610 F.3d 382, 385 (7th Cir. 2010), had been hired to investigate a wide-ranging fraud in Cumberland County. According to the allegations in that case—allegations never either confirmed or refuted, because the suit was dismissed as time-barred and we affirmed the dismissal—the defendants (who overlap with the defendants in this case) asked the Illinois Attorney Registration and Disciplinary Commission to force Wolfe to leave the state by threatening that otherwise it would reopen investigations of him that it had closed. He left the state but returned six months later to testify before a grand jury about the fraud. Upon his return investigations into him were reopened and (or) new investigations launched. He alleges that the present defendants publicized the investigations in order to defeat his bid to be elected State's Attorney. Schaefer, who was State's Attorney when the fraud was exposed and who prosecuted its ringleader (and so had not been named a defendant in the *Hayden* case), is one of the defendants, as we noted; the others are employees of the commission plus a former chairman of the state's judicial inquiry board who had been a lawyer for a defendant in the *Hayden* case.

The state statutes under which Wolfe was being investigated require, with exceptions that we can assume are

immaterial, that the investigations be kept confidential. But his complaint does not claim a violation of state law, though he could have included such a claim—it would have been within the district court's supplemental jurisdiction. 28 U.S.C. § 1367. The complaint, and his brief on appeal, mention section 1367 but do not advance a state law claim. There is no claim of interference with his candidacy, and probably couldn't be. See *Willan v. Columbia County*, 280 F.3d 1160, 1162 (7th Cir. 2002); *Flinn v. Gordon*, 775 F.2d 1551, 1553 (11th Cir. 1985). The only claim is that his federal constitutional right of privacy was violated.

At argument his lawyer contended that state law is relevant to the complaint, but he seemed to equivocate between the view that any violation of state law is actionable under the due process clause of the Fourteenth Amendment, which is false, *Collins v. City of Harker Heights*, 503 U.S. 115, 128-30 (1992); *Christensen v. County of Boone*, 483 F.3d 454, 462 n. 2 (7th Cir. 2007), and the correct view, which is that state law can (within limits) create a property or liberty interest that is protected by the Constitution against a deprivation that involves a denial of due process. *Board of Regents v. Roth*, 408 U.S. 564, 576-78 (1972); *Brown v. City of Michigan City*, 462 F.3d 720, 728-29 (7th Cir. 2006). But what counts as "property" or "liberty" for this purpose is a federal question.

There is of course a common law tort of privacy, of a somewhat miscellaneous character: "it is generally recognized by a majority of jurisdictions that the [common law] right of privacy may be invaded in four different ways:

(1) unreasonable intrusion upon the seclusion of another; (2) appropriation of another's name or likeness; (3) unreasonable publicity given to another's private life; and (4) publicity that unreasonably places another in a false light before the public." *Robert C. Ozer, P.C. v. Borquez*, 940 P.2d 371, 377 (Colo. 1997); see *Restatement (Second) of Torts* § 652A (1977). The interest protected by the third clause—informational privacy—is the one at issue in this case. It is illustrated by the unauthorized publicizing of a person's medical condition, *Robert C. Ozer, P.C. v. Borquez, supra*, 940 P.2d at 377-78; *Miller v. Motorola, Inc.*, 560 N.E.2d 900, 903-04 (Ill. App. 1990), personal finances, *Biederman's of Springfield, Inc. v. Wright*, 322 S.W.2d 892, 895-98 (Mo. 1959), and sexual proclivities or activities. *Nappier v. Jefferson Standard Life Ins. Co.*, 322 F.2d 502, 504-05 (4th Cir. 1963) (South Carolina law); *Lewis v. LeGrow*, 670 N.W.2d 675, 687-89 (Mich. App. 2003). But as the plaintiff is not suing to enforce state common law rights, we must consider how much of that common law has become a part of federal constitutional law when the infringer is a state or federal entity and thus subject to the due process clause.

In *Whalen v. Roe*, 429 U.S. 589, 598-600 (1977), the Supreme Court had held that "liberty" includes "privacy." But except when dealing with searches and seizures, the Court in the decades since has confined the label "privacy" mainly to sexual and reproductive rights, such as the right to use contraceptives or have an abortion or engage in homosexual acts. E.g., *Lawrence v. Texas*, 539 U.S. 558, 578 (2003); *Planned Parenthood of Southeastern Pennsylvania v. Casey*, 505 U.S. 833, 846-53 (1992); *Carey*

*v. Population Services, Int'l*, 431 U.S. 678, 684-89 (1977). The privacy at issue in this case is different; it is the right to conceal information about oneself. That is the right commonly infringed by illegal searches and seizures, but in other contexts is recognized by the Supreme Court only when anonymity is sought in order to protect freedom of expression. *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 341-43, 357 (1995); *Buckley v. Valeo*, 424 U.S. 1, 64 (1976) (per curiam); *NAACP v. Alabama*, 357 U.S. 449, 460-66 (1958).

The Court has never held that the disclosure of private information denies due process. But in *Whalen* it did suggest that there might be a due process right to the nondisclosure of certain private information, 429 U.S. at 599-600, though it upheld the law challenged in that case; a law that required a copy of every prescription for certain drugs that have both lawful and unlawful uses (methadone, for example) to be filed with state health authorities. A contemporaneous decision, *Nixon v. Administrator of General Services*, 433 U.S. 425, 457-58 (1977), was more explicit about the existence of a constitutional right of privacy in personal papers, but again the plaintiff lost.

The courts of appeals, including this court, have interpreted *Whalen* to recognize a constitutional right to the privacy of medical, sexual, financial, and perhaps other categories of highly personal information—information that most people are reluctant to disclose to strangers—and have held that the right is defeasible only upon proof of a strong public interest in access to or dissemination of

the information. See, e.g., *Denius v. Dunlap*, 209 F.3d 944, 955-58 (7th Cir. 2000); *Anderson v. Romero*, 72 F.3d 518, 521-22 (7th Cir. 1995); *Nelson v. NASA*, 530 F.3d 865, 877-82 (9th Cir. 2008), cert. granted, 130 S. Ct. 1755 (2010); *Summe v. Kenton County Clerk's Office*, 604 F.3d 257, 270-71 (6th Cir. 2010); *Aid for Women v. Foulston*, 441 F.3d 1101, 1116-17 (10th Cir. 2006); *Zaffuto v. City of Hammond*, 308 F.3d 485, 488-91 (5th Cir. 2002); *Norman-Bloodsaw v. Lawrence Berkeley Laboratory*, 135 F.3d 1260, 1269-70 (9th Cir. 1998); *Eastwood v. Department of Corrections*, 846 F.2d 627, 631 (10th Cir. 1988); *Fraternal Order of Police, Lodge No. 5 v. City of Philadelphia*, 812 F.2d 105, 114-15 (3d Cir. 1987); *Thorne v. City of El Segundo*, 726 F.2d 459, 468 (9th Cir. 1983); Helen L. Gilbert, Comment, "Minors' Constitutional Right to Informational Privacy," 74 *U. Chi. L. Rev.* 1381, 1382-84 (2007). The Supreme Court, in contrast, has seemed more interested in limiting the right of informational privacy than in its recognition and enforcement. It has held that reputation is not part of the liberty that the due process clauses protect, *Paul v. Davis*, 424 U.S. 693, 711-13 (1976), even though concern with reputation is one of the principal reasons people don't want personal information about themselves broadcast to strangers. It has held that the First Amendment forbids a state to punish broadcasting the name of a murdered rape victim if her name is in judicial records open to public inspection. *Cox Broadcasting Corp. v. Cohn*, 420 U.S. 469, 494-96 (1975); see also *The Florida Star v. B.J.F.*, 491 U.S. 524, 532-34 (1989); *Bowley v. City of Uniontown Police Dep't*, 404 F.3d 783, 786-89 (3d Cir. 2005). Even the publicizing of highly personal information that is not in a record open to

public inspection is privileged if there is a public interest in access to the information.. *Bartnicki v. Vopper*, 532 U.S. 514, 534-35 (2001); *Haynes v. Alfred A. Knopf, Inc.*, 8 F.3d 1222, 1231-35 (7th Cir. 1993).

The rejection in *Paul v. Davis* of a liberty or property interest in reputation casts doubt on the propriety of basing a federal constitutional right to informational privacy on a state's decision to recognize such privacy as a species of liberty or property. *Paul* illustrates the modern Supreme Court's expansive view of freedom of speech and of the press, a view that casts doubt on *any* effort to limit the public disclosure of personal information, however private. But the Court has not yet completely extinguished state-law protections, whether common law or statutory, against publication of intimate details of people's private lives in which other people might be interested. Amy Gajda, "Judging Journalism: The Turn Toward Privacy and Judicial Regulation of the Press," 97 *Cal. L. Rev.* 1039 (2009). True, not extinguishing a private right is not the same thing as elevating it to a constitutional right. Yet there is an air of paradox in giving constitutional protection in the name of privacy to conduct that stretches the ordinary understanding of the concept of privacy, yet denying it to intensely private information, which is at the concept's core. Maybe the Supreme Court will clarify the issue in *Nelson v. NASA*, in which, as we noted, it recently granted certiorari.

The tension between informational privacy and free speech resides not only in the extravagant (as it seems

to some observers) modern conception of the scope of free speech but also in the fact that people often conceal personal information not out of regard for privacy as such but as a means of advancing their personal interests by *selective*, which is to say tactical, disclosure of such information. They disclose the good and hide the bad. (A long courtship is one of the defensive measures that people take to avoid being misled by selective disclosure in the marriage market.) Tactically motivated concealment of embarrassing or discreditable personal information can—often it is intended to—hide things in which the public has a legitimate interest. That is illustrated by the present case, which involves a challenge to the disclosure of investigations of misconduct. At oral argument Wolfe's lawyer went so far as to suggest that the investigators should have been forbidden to reveal Wolfe's identity to the persons whom they interviewed about his alleged legal and ethical violations, lest those persons tell others and as a result journalists get wind of the investigations and of the identity of the target of the investigations. Such a prohibition would scotch the investigations.

Conflicts between the interests in informational privacy and in public disclosure of information require accommodation. If Congress required airline passengers to fly nude in order to reduce the risk of a terrorist incident, one imagines that the law might well be held to infringe a constitutional right to privacy even though there is a substantial social interest in airline safety. This case is at the other end of the spectrum. Information that a public official or candidate for public office has been the

subject of an investigation by an official body is likely to come out sooner or later and to have public value, often to the investigating agency itself. Some investigations are conducted in secrecy, for example in national security cases. But others are announced in advance in an effort to elicit further information or respond to public demand, as when the U.S. Attorney General announced that the Department of Justice was investigating BP for possible civil and criminal violations relating to the oil leak in the Gulf of Mexico that began in the spring of 2010. The fact that a candidate for public office is under investigation for legal and ethical violations is likewise a matter of substantial public interest.

Wolfe's suit was properly dismissed.

AFFIRMED.