In the

# United States Court of Appeals

## For the Seventh Circuit

———————————

Nos. 25-1917, 25-1918 & 25-1919

JANE DOE 1, *et al.*,

*Plaintiffs-Appellants*,

*v.*

STEVEN V. SLOAN, *et al.*,

*Defendants-Appellees*.

———————————

Appeals from the United States District Court for the
Central District of Illinois.
Nos. 1:23-cv-01035, -36 & -37 — **Jonathan E. Hawley**, *Judge*.

———————————

ARGUED FEBRUARY 17, 2026 — DECIDED APRIL 14, 2026

———————————

Before BRENNAN, *Chief Judge*, and RIPPLE and TAIBLESON, *Circuit Judges*.

TAIBLESON, *Circuit Judge*. In 2019, law enforcement in the small town of Toulon, Illinois, was investigating a collection of sexually explicit images of local underage girls stored on an online file-sharing service. As part of that investigation, officers sent a link to the files to Jason Musselman, an "auxiliary police officer" and IT employee for the Toulon Police Department. Musselman was supposed to help police identify the

underage girls, and he did. But he also kept the images for his own use—a fact discovered years later, when Musselman was investigated for and convicted of other child pornography offenses.

Musselman is currently serving a 35-year sentence for creating, possessing, and sharing child pornography. In addition, nine of Musselman's victims sued him under state tort law and a federal law that allows victims of child pornography offenses to recover from perpetrators; those claims are continuing in the district court and are not at issue in this appeal. The victim-plaintiffs also sued two local police officers and their employers under 42 U.S.C. § 1983, claiming that the officers violated their substantive due process rights under the Fourteenth Amendment when they gave Musselman access to their sexually explicit images. The district judge granted defendants' motions to dismiss those § 1983 claims, and plaintiffs appeal those dismissals.

We affirm the judgment below. Although Musselman's crimes were vile, plaintiffs have not alleged a viable substantive due process claim.

## I. Background[1]

In January of 2019, the Stark County, Illinois, Sheriff's Office learned about a Dropbox file referred to as "Blue Breeze," which contained sexually explicit images of local underage

---

[1] At the motion to dismiss stage, the court takes all well-pleaded allegations as true and views them in the light most favorable to the plaintiffs. *See Indep. Tr. Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 934 (7th Cir. 2012). We therefore recite here the pertinent "factual allegations of the operative complaint without vouching for their truth." *Nelson v. City of Chicago*, 992 F.3d 599, 602 (7th Cir. 2021).

girls. Defendant Steven Sloan, the Sheriff of Stark County, assigned the Blue Breeze investigation to defendant Gary Bent, who was both a Deputy Sheriff of Stark County and Chief of the Toulon Police Department. Toulon is a small town and the county seat of Stark County.

Deputy Bent sought Musselman's help with the Blue Breeze investigation. At the time, Musselman was an auxiliary police officer for the Toulon Police Department. Musselman also worked as the "I.T. person for the department," and he had previously served as Stark County's Emergency Services Disaster Agency ("ESDA") Director. In these capacities, Musselman had "regularly participated in official investigations … that involved the internet and electronic information technology." Musselman was not, however, a formal employee of the Stark County Sheriff's Office, nor had he received training in investigative protocols for handling child pornographic materials.[2]

Musselman agreed to help identify the girls depicted in the Blue Breeze images, and Deputy Bent provided him with the Dropbox link. Musselman reviewed the images, and, as promised, helped with identifications. But—unbeknownst to the other defendants—Musselman kept the images on his personal computer for his own viewing and distribution.

A few years later, in 2021, law enforcement began investigating Musselman for child pornography offenses, including creating child pornography using a hidden camera in a

---

[2] Plaintiffs emphasize that when Musselman returned his ESDA laptop to the County in 2015, it contained "an image of children or young adults engaged in acts of sexual conduct," as well as indicia that other pornographic images had been deleted.

tanning bed in his home. During that investigation, agents discovered Blue Breeze images in Musselman's possession, including nude or partially nude images of at least one of the plaintiffs here. Musselman pleaded guilty to child pornography offenses and was sentenced to 35 years' imprisonment.

Plaintiffs sued Musselman in three separate civil actions that have been consolidated for discovery proceedings and for purposes of this appeal. The complaints alleged claims under 18 U.S.C. § 2255(a), which provides a cause of action for victims of certain crimes committed against minors, and under Illinois common law for intrusion upon seclusion. Plaintiffs later added claims against Sheriff Sloan, Deputy Bent, Stark County, and the City of Toulon, alleging intrusion upon seclusion under Illinois law and violations of their Fourteenth Amendment substantive due process rights under 42 U.S.C. § 1983. Sheriff Sloan, Deputy Bent, Stark County, and the City of Toulon moved to dismiss these claims.

The district court granted these motions to dismiss in part. The judge dismissed all the § 1983 claims on the grounds that plaintiffs had failed to allege a violation of a recognized constitutional right. Even if they had, the district judge found that any such right was not clearly established, meaning that qualified immunity would shield Sheriff Sloan and Deputy Bent from liability. The district court also dismissed the intrusion-upon-seclusion claims against Sheriff Sloan, Deputy Bent, and Stark County, but not against the City of Toulon. The district court granted plaintiffs' motion for final judgment under Fed. R. Civ. P. 54(b), and plaintiffs now appeal the dismissal of their § 1983 claims.

## II. Discussion

We review the district court's dismissal *de novo*. *Nelson v. City of Chicago*, 992 F.3d 599, 603 (7th Cir. 2021). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). On appeal, plaintiffs maintain that their complaints raise cognizable substantive due process claims.

The Due Process Clause of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. Under longstanding Supreme Court precedent, that clause protects not only procedural rights but also some substantive ones—specifically, "a select list of fundamental rights that are not mentioned anywhere in the Constitution" but that are "deeply rooted in [our] history and tradition" and "essential to our Nation's 'scheme of ordered liberty.'" *Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215, 237 (2022) (citations omitted) (alteration in original). It is that type of fundamental substantive right under the Due Process Clause that plaintiffs seek to vindicate through their § 1983 claims.

Generally, § 1983 allows plaintiffs to sue state actors who violate their "rights" under "the Constitution and laws" of the United States. But a "person seeking relief under section 1983 for a violation of h[er] Fourteenth Amendment right to substantive due process faces a difficult task." *Robbin v. City of Berwyn*, 108 F.4th 586, 589 (7th Cir. 2024) (citation omitted). Articulating a substantive due process right requires "a 'careful description' of the asserted fundamental liberty interest"

claimed to be violated. *Washington v. Glucksberg*, 521 U.S. 702, 721 (1997) (citations omitted); *see, e.g.*, *Christensen v. County of Boone*, 483 F.3d 454, 462 (7th Cir. 2007). Once articulated, that specific interest must be grounded in "[o]ur Nation's history, legal traditions, and practices." *Glucksberg*, 521 U.S. at 721. Both the Supreme Court and our court have cautioned that the "scope of substantive due process is very limited," and that judges should be "reluctant to expand the concept." *Campos v. Cook County*, 932 F.3d 972, 975 (7th Cir. 2019) (citations omitted).

The parties debate at length about how to define the alleged right that defendants violated when they gave Musselman access to the plaintiffs' images. The complaints use various formulations to describe the claimed right, including the "right to the privacy of sexual highly personal matters" and the "right to avoid the nonconsensual dissemination of access to Plaintiff[s'] private sexual images." But plaintiffs do not defend those formulations on appeal, and for good reason: They are too broad to capture the precise interest at stake here because they omit key factual details that are critical to "set[ting] the boundaries of the liberty interest" at stake. *Doe v. City of Lafayette*, 377 F.3d 757, 769 (7th Cir. 2004) (en banc); *cf., e.g.*, *Doe v. Gray*, 75 F.4th 710, 717 (7th Cir. 2023) ("A general recognition of a privacy right in certain medical or sexual information is not enough to show a more specific privacy right in one's sexual preference or gender identity *during a criminal or child welfare investigation*, especially one involving allegations of child sexual abuse." (emphasis added)).

The district court improved on the complaints' formulations, defining the right as "the right to be free from one's nude photos that are the subject of an ongoing criminal

investigation being disclosed in furtherance of the investigation to individuals without actual authority to access them." Plaintiffs suggest adding to this formulation that the pictures depicted minors and that the recipient permanently retained the pictures without authority.[3] Defendants, for their part, advocate for a formulation that specifies that the pictures were "already created" and that the recipient was an individual working on the investigation.

As this debate reflects, defining the claimed right in a case like this one is not an exact science. The district judge's formulation seems about right. *See, e.g.*, *Glucksberg*, 521 U.S. at 723 (defining "right to commit suicide which itself includes a right to assistance in doing so"); *K.C. v. Individual Members of Med. Licensing Bd. of Ind.*, 121 F.4th 604, 624 (7th Cir. 2024) (defining parents' "right to access gender transition procedures for their children"); *City of Lafayette*, 377 F.3d at 769 (defining "right to enter the parks to loiter or for other innocent purposes"). And both plaintiffs and defendants propose reasonable additions, including that the nude images were of minors and that the officers did not create the images themselves. But further wordsmithing would be wasted here, because none of these formulations describes a fundamental liberty interest protected by the Due Process Clause.

Plaintiffs rely on case law to carry their burden of showing that their claimed right reflects "a liberty deeply rooted in our

---

[3] Specifically, plaintiffs propose to define the right as: "The right to be free from one's nude photos taken while a minor and constituting child sexual assault material that are the subject of an ongoing criminal investigation being given copies of the nude photos in furtherance of the investigation to individuals without actual authority to permanently retain copies of them."

history and tradition." *Khan v. Gallitano*, 180 F.3d 829, 834 (7th Cir. 1999). But none of their cases support such a historical tradition.

To start, plaintiffs principally rely on *York v. Story*, 324 F.2d 450 (9th Cir. 1963), to argue that the Due Process Clause creates a constitutional privacy right that prohibits defendants' conduct here. But *York*—a Ninth Circuit case that predated *Glucksberg*'s definition of substantive due process—involved egregious police conduct quite distinct from Sheriff Sloan's and Deputy Bent's actions. The *York* plaintiff went to the police department to file assault charges, where a male officer took her to a locked room and, over her objections, directed her to undress and pose in revealing positions while he took pictures of her without "any lawful or legitimate purpose." *Id.* at 452. The officer later told the *York* plaintiff that the pictures had not come out. *Id.* But that was a lie: The officer circulated the pictures within the police department, and two other officers subsequently made and circulated more copies—all without any investigative purpose. *Id.* The Ninth Circuit observed that taking the photographs might have constituted an "unreasonable search" under the Fourth Amendment. *Id.* at 454. But it ultimately concluded that the entire course of conduct violated the plaintiff's privacy rights under the Due Process Clause of the Fourteenth Amendment. *Id.* at 454–56.

To complement *York*, plaintiffs rely on *Whalen v. Roe*, 429 U.S. 589 (1977), and "its Seventh Circuit progeny," particularly *Wolfe v. Schaefer*, 619 F.3d 782 (7th Cir. 2010). But those cases are even further afield. In *Whalen*, the Supreme Court considered "whether the State of New York may record … the names and addresses of all persons who have obtained,

pursuant to a doctor's prescription, certain drugs." 429 U.S. at 591. In the course of answering that question (yes), the Court observed that its constitutional "privacy" cases have involved both "the individual interest in avoiding disclosure of personal matters" and "the interest in independence in making certain kinds of important decisions." *Id.* at 599–600. Citing *Whalen*, we then observed in *Wolfe* that there may be "a constitutional right to the privacy of medical, sexual, financial, and perhaps other categories of highly personal information"—but noted that the Supreme Court "has seemed more interested in limiting" such a right "than in its recognition and enforcement." *Wolfe*, 619 F.3d at 785–86 (holding plaintiff's Due Process privacy rights were not violated when defendants publicly disclosed that plaintiff was the subject of confidential investigations for violations of state law).

To describe these cases is to distinguish them, both factually and legally. Unlike Sheriff Sloan and Deputy Bent, the *York* defendants executed an arguably unconstitutional Fourth Amendment "search"—implicating a constitutional provision that has no application here—and then distributed those images outside the context of any investigation. *Whalen* and *Wolfe* offer only broad observations about "privacy" in the context of disputes that bear no resemblance to this one. And all these cases predate the Supreme Court's recent and extensive treatment of a constitutional "privacy right" and substantive due process, *Dobbs*, 597 U.S. at 235–40, without engaging in the careful historical analysis that is now required. Thus, none of plaintiffs' cases, nor any we can find, demonstrate a fundamental liberty interest against the police sharing, in the course of an investigation, sexually explicit images of minors with an untrained auxiliary officer who is investigating those images.

That means that for plaintiffs' claims to prevail, we would have "to break new ground" and recognize plaintiffs' claimed right as one protected by the Due Process Clause for the first time—a request that requires us to "exercise the utmost care." *Glucksberg*, 521 U.S. at 720 (citation omitted). Identifying rights that are "deeply rooted in this Nation's history and tradition" and without which "neither liberty nor justice would exist" as we know it, *id.* at 720–21 (citations omitted), requires "a careful analysis of the history of the right at issue." *Dobbs*, 597 U.S. at 238; *see also id.* at 239 ("Historical inquiries of this nature are essential whenever we are asked to recognize a new component of the 'liberty' protected by the Due Process Clause."). But plaintiffs have made no effort to conduct that historical inquiry or to show that their claimed right satisfies the *Glucksberg* criteria. Without a principled grounding in history, tradition, or precedent, we decline to recognize a new substantive due process right today.

We reach this conclusion notwithstanding the seriousness of plaintiffs' allegations and the real harm that Musselman caused. As defendants acknowledged at oral argument, their handling of the Blue Breeze files left much to be desired. But the Due Process Clause is not a vehicle for judges to fashion evidence-sharing protocols in child pornography cases. Not every wrong is a constitutional one, and plaintiffs continue to press their statutory and common-law tort claims below. *See DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 202 (1989) (Due Process Clause "does not transform every tort committed by a state actor into a constitutional violation").

The district court correctly dismissed the § 1983 claims, and its judgment is

AFFIRMED.