In the

# United States Court of Appeals
## For the Seventh Circuit

No. 06-3627

MICHAEL J. WITKOWSKI,

*Plaintiff-Appellant,*

*v.*

MILWAUKEE COUNTY, *et al.*,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 05-C-442—**Rudolph T. Randa**, *Chief Judge.*

ARGUED FEBRUARY 15, 2007—DECIDED MARCH 13, 2007

Before EASTERBROOK, *Chief Judge*, and POSNER and
KANNE, *Circuit Judges*.

EASTERBROOK, *Chief Judge.* Laron Ball was on trial
during May 2002 for murder. Ball had threatened may-
hem if convicted, so the court took extra precautions,
including extra deputy sheriffs and fitting Ball with a
stunbelt. Steven Gunn and Andrew Halstead, the two
deputy sheriffs normally assigned to the courtroom of
Jacqueline Schellinger, the judge presiding over Ball's
trial, considered the steps needed to secure and main-
tain the stunbelt an irritating hindrance. On May 29 Gunn
and Halstead decided to take Ball to court without the
belt; they did not inform the other deputy sheriffs of this
decision. The jury returned its verdict that day, pronounc-

ing Ball guilty. Ball leapt into the jury box and grabbed a gun from deputy sheriff Michael J. Witkowski, who had been posted there for additional security. Ball shot Witkowski in the leg; before he could do worse, Ball was himself shot and killed by a detective.

Witkowski contends in this action under 42 U.S.C. §1983 that Gunn, Halstead, two of their supervisors, and the county where court was being held all violated his rights under the due process clause of the fourteenth amendment by reducing the security precautions with "deliberate indifference" to the risk that Ball posed. (Gunn and Halstead not only failed to attach the stunbelt on May 29 but also were outside the courtroom when the jury returned its verdict, an especially dangerous moment given the nature of Ball's threats.) The district judge granted judgment on the pleadings, see Fed. R. Civ. P. 12(c), to all defendants, ruling that the Constitution does not assure public employees a safe place to work. 2006 U.S. Dist. LEXIS 62447 (E.D. Wis. Aug. 30, 2006).

Witkowski was paid to protect judges and the public from the likes of Ball. To the extent this exposed him to a personal risk he took it willingly, in exchange for pay and fringe benefits. The Constitution does not entitle him to more medical benefits and insurance than what he agreed to accept. "Neither the text nor the history of the Due Process Clause supports [a] claim that the governmental employer's duty to provide its employees with a safe working environment is a substantive component of the Due Process Clause." *Collins v. Harker Heights*, 503 U.S. 115, 126 (1992). The bill of rights protects people from the government but does not oblige the government to furnish protection against private violence. In this sense the Constitution is a charter of negative liberties. See *DeShaney v. Winnebago County Department of Social Services*, 489 U.S. 189 (1989).

Neither Gunn nor Halstead shot Witkowski; Ball did. The most one can say is that Gunn and Halstead failed to protect Witkowski (and everyone else in the court-room) from Ball. *DeShaney* holds that public failure to protect someone from private predation is not a "constitutional tort." We had anticipated *Collins* and *DeShaney* in *Walker v. Rowe*, 791 F.2d 507, 510 (7th Cir. 1986), which held that "[t]he constitution no more assures a safe job than it does a job with a generous salary." See also *Archie v. Racine*, 847 F.2d 1211 (7th Cir. 1988) (en banc); *Bowers v. DeVito*, 686 F.2d 616 (7th Cir. 1982); for post-*Collins* decisions see, e.g., *Wallace v. Adkins*, 115 F.3d 427 (7th Cir. 1997) (rejecting a claim by a prison guard stabbed by an inmate who had threatened this guard, in particular).

Despite acknowledging that no decision in this circuit (or in any circuit after *Collins*) has awarded damages under §1983 to a public employee injured in the line of duty, Witkowski maintains that all of these cases may be put to one side because his complaint alleges that Gunn and Halstead acted intentionally, recklessly, or with deliberate indifference (a form of intent, see *Farmer v. Brennan*, 511 U.S. 825 (1994)) to the safety of others. Witkowski contends that this allegation places him within the scope of what he calls the "state-created danger exception" to *DeShaney*.

Allegations of intent do not distinguish *Wallace*, for the guard in that case alleged that supervisors knew of the special danger he faced from a given inmate and placed him in the same cell block as that inmate anyway. Nor does it distinguish *Walker*, where the prison guard alleged that a supervisor, knowing that a riot was under way in the prison, deliberately refused to issue guards with the weapons needed to defend themselves. Or *Collins*, where the plaintiff alleged that the city deliberately failed to

train the workers in safe procedures. More importantly, the line of argument fundamentally misunderstands the point of *DeShaney*, *Collins*, and the state-created-danger cases, such as *Monfils v. Taylor*, 165 F.3d 511 (7th Cir. 1998).

*DeShaney* held, and *Collins* reiterated, that the Constitution does not require the government to protect citizens from privately created danger. It may, however, demand protection if the state disables people from protecting themselves; having rendered someone helpless, the state must supply the sort of defenses that the person could have provided on his own. So, for example, if the state imprisons someone and prevents him from obtaining medical care from private physicians and hospitals, then the state must supply medical care for serious problems. See *Estelle v. Gamble*, 429 U.S. 97 (1976). If the state takes a child from his parents and places him involuntarily with a foster family, it must take precautions to reduce the chance that the foster parents will abuse the child. See *Murphy v. Morgan*, 914 F.2d 846 (7th Cir. 1990). If the police arrest a car's driver and induce a drunk to move from the passenger seat to the wheel, the state has some obligation to the people it has imperiled. See *Reed v. Gardner*, 986 F.2d 1122 (7th Cir. 1993). If the state forbids private rescue of a drowning man, then the state must furnish a competent rescue service of its own. See *Ross v. United States*, 910 F.2d 1422 (7th Cir. 1990). See generally *Stevens v. Umsted*, 131 F.3d 697, 705 (7th Cir. 1997).

All of these cases are variations on the principle that "if the state puts a man in a position of danger from private persons and then fails to protect him . . . it is as much an active tortfeasor as if it had thrown him into a snake pit." *Bowers*, 686 F.2d at 618. But someone who chooses to enter a snake pit or a lion's den for compensation cannot

complain. Powerful evidence shows that higher wages compensate people whose jobs are risky. See, e.g., Xiangdong Wei, *Wage compensation for job-related illness*, 34 J. Risk & Uncertainty 85 (2007) (collecting earlier studies). That evidence is not what undercuts Witkowski's claim, however; what is dispositive against him is the fact that he is a volunteer rather than a conscript. The state did not force him into a position of danger.

This is not to say that public employees are beyond the Constitution's protection. Suppose Witkowski had alleged that Milwaukee County exposed him to extra risks because he had campaigned against the County's political leaders or because of his race. Such allegations would state a legally sufficient claim under the first amendment or the equal protection clause of the fourteenth. See *Collins*, 503 U.S. at 119-20. That is not Witkowski's theory, however. He invokes only the due process cause, the domain of *Collins*, *DeShaney*, and *Walker*. Allowing Ball into court without the stunbelt imperiled everyone there: judge, jurors, and spectators were at more risk than Witkowski, who could have protected himself (and everyone else) had he kept control of his weapon. All Witkowski meant by alleging that Gunn and Halstead acted intentionally or recklessly is that they knew about Ball's willingness and desire to wreak havoc, not that they had some ulterior motive for wanting Witkowski dead or wounded. Disregarding a known risk to a public employee does not violate the Constitution whether or not the risk comes to pass.

AFFIRMED

A true Copy:

Teste:

_____
*Clerk of the United States Court of
Appeals for the Seventh Circuit*