In the

# United States Court of Appeals

### For the Seventh Circuit

No. 08-4245

TADEUSZ PALKA,

*Plaintiff-Appellant,*

*v.*

ROGER SHELTON, Cook County Sheriff
Police Detective, individually, et al.,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 1:07-cv-05432—**Virginia M. Kendall**, *Judge.*

ARGUED OCTOBER 7, 2009—DECIDED OCTOBER 7, 2010

Before RIPPLE, KANNE, and SYKES, *Circuit Judges.*

SYKES, *Circuit Judge.* Tadeusz Palka was employed for 28 years as a Deputy Sheriff in the Cook County Sheriff's Department. His son Peter was an aspiring police officer enrolled in the Chicago Police Department's Police Academy. He did not complete the program, however. He was terminated from the Academy, ostensibly for not having mastered the Police

Department's firearms manual. Palka thought his son had been targeted for termination based on his Polish ethnicity, and he intervened on his son's behalf with Matthew Tobias, the Chicago Police Department official who was in charge of the Academy. The intervention did not end well; Peter Palka was not reinstated. A few weeks later, a strange phone call was received by the elementary school Tobias's children attended. The caller had a Polish accent and made inquiries about Tobias's children. Tobias traced the call to the Cook County Building, which confirmed his suspicion that Tadeusz Palka was the anonymous caller.

Tobias filed a complaint against Palka with the Internal Affairs Division of the Sheriff's Department, and Palka was suspended with pay during the ensuing investigation. A hearing was eventually scheduled before the County's Merit Systems Protection Board, but Palka resigned his position just before the hearing. He then filed this § 1983 action against Cook County, the City of Chicago, the Sheriff, and numerous employees of both the Sheriff's Department and the Police Department. He claimed the defendants violated his procedural and substantive due-process rights prior to his suspension and resignation, and deprived him of his interest in "occupational liberty." His claims against the City and County were brought pursuant to *Monell v. Department of Social Services*, 436 U.S. 658 (1978). After Palka filed a second and then a third amended complaint, the district court granted the defendants' motion to dismiss Palka's claims with prejudice. We affirm.

## I. Background

Tadeusz Palka was a Cook County Deputy Sheriff, and his son Peter was in training to become a police officer at the Chicago Police Academy. In February 2007 Peter was terminated from the Academy. Palka believed his son was singled out for termination because he is Polish, and he contacted Assistant Deputy Superintendent Matthew Tobias, the head of the Police Academy, to complain. Palka tried to convince Tobias to reinstate Peter, but Tobias refused, telling Palka that Peter was terminated based on his lack of knowledge regarding the Police Department's firearms manual.

On May 9, 2007, an unidentified caller phoned the school in Park Ridge, Illinois, that Tobias's children attended and made inquiries about the children. When the school receptionist asked the caller to identify himself, the caller stated he was a "friend" and wanted to send the children flowers for their birthdays. The receptionist reported the call to Tobias and told him the caller was a man with a Polish-sounding Eastern European accent. Based on this information and the recent dispute over Peter Palka's termination from the Police Academy, Tobias suspected that Tadeusz Palka was the caller. Tobias launched an investigation, asking Nicholas Roti, who was then the commander of the Police Department's Gang Crimes Unit, to look into the call. Roti instructed two subordinates to retrieve the school's phone records and trace the call using "whatever method would get the info the quickest." The phone records revealed that on the afternoon of May 9, the

school received a call from a telephone number at the Cook County Building at 69 West Washington Street in downtown Chicago. This confirmed Tobias's suspicion that Palka was the caller, so he reported the call to the Park Ridge Police Department. He also opened a Police Department Original Case Incident report and filed a "Selective Enforcement—Non-Traffic" report with the Department; this allowed him to run Palka's license plate and driver's license through the "Leads System" to check if Palka had any outstanding warrants.

Tobias also asked Deputy Superintendent Constantine Andrews and Commander Joseph Salemme of the Chicago Police Department to speak with Palka. At around 10 p.m. on May 10, 2007, Andrews and Salemme went to Palka's residence in suburban Norridge, Illinois. Palka was not home when they arrived; the complaint alleges that the officers woke up an elderly neighbor to ascertain Palka's whereabouts. When Palka arrived home at about 10:30 p.m., the officers accused him of making the phone call to Tobias's children's school the day before. Palka denied making the call. The officers continued to insist that he was the caller, but they also told him that the call was not a "big deal" and he should not "do it anymore."

On the morning of May 11, 2007, Tobias filed a complaint with the Sheriff's Department's Office of Internal Affairs accusing Palka of making the telephone call. In the complaint Tobias said that he, his wife, and the school staff considered the phone call to be threatening; they were concerned that Palka was attempting to stalk

and possibly harm his children, and the school staff feared for the safety of the entire student body. The complaint also stated that Palka had attempted to adversely affect Tobias's employment status with the Chicago Police Department as revenge for Peter's termination from the Police Academy. Later that same day, in response to Tobias's complaint, Palka's supervisor and the head of Internal Affairs summoned Palka to a meeting, confiscated his badge and firearm credentials, de-deputized him, and placed him on paid suspension. Palka alleges that he was told he was being de-deputized because of a phone call from a "big wheel" at the Police Department.

About two months later, in July 2007, Sheriff's Detective Roger Shelton and another detective met with Palka and his attorney. The detectives told Palka they would refer the telephone call incident to the Cook County State's Attorney for possible criminal prosecution unless Palka voluntarily resigned as a Sheriff's Deputy. Palka refused to resign. Although the detectives did discuss the matter with the State's Attorney's Office, no charges were filed.

The disciplinary proceedings moved forward, however, and charges were eventually filed against Palka with the Merit Board, recommending that his employment be terminated. A hearing was scheduled for March 2008, but before it was held, Chief Edward Carik of the Sheriff's Department told Palka that if he retired, the Merit Board action would "go away" and he would receive full retirement benefits, including his retirement

badge and firearms credentials, which would permit him to obtain another job in law enforcement. Palka accepted this advice and resigned, but he has not received his retirement badge and credentials.

Palka then filed this suit alleging he was deprived of his due-process rights in violation of 42 U.S.C. § 1983. The district court dismissed Palka's first two complaints without prejudice; Palka's third amended complaint is the subject of this appeal. In that complaint Palka named as defendants Cook County, the Sheriff, the City of Chicago, and numerous officials in the Police and Sheriff's Departments. The district court "charitably" construed the complaint to allege procedural and substantive due-process claims, a claim for deprivation of occupational liberty, and *Monell* claims against the City and County. The defendants moved to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. The district court granted this motion and dismissed Palka's claims with prejudice, and Palka appealed.

## II. Discussion

We review the district court's order dismissing the complaint de novo and will affirm if the allegations fail "'to state a claim for relief that is plausible on its face.'" *Justice v. Town of Cicero*, 577 F.3d 768, 771 (7th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009)). In reviewing the sufficiency of the complaint, we accept the facts pleaded in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Id.*

## A. Procedural and Substantive Due-Process Claims

Palka's complaint alleges two separate procedural due-process violations: First, he claims he was deprived of due process prior to his suspension; and second, he claims he was deprived of due process prior to his resignation, which he contends was coerced. To plead a procedural due-process claim, Palka must allege a cognizable property interest, a deprivation of that interest, and a denial of due process. *Hudson v. City of Chicago*, 374 F.3d 554, 559 (7th Cir. 2004). As a threshold matter, the procedural due-process claims against the City and its employees necessarily fail. Because the County, not the City, was Palka's employer, Palka cannot sue the City and its employees for depriving him of due process in connection with the loss of his employment.

Nor has Palka stated a cognizable claim against Cook County or any of its employees. A property interest in continued employment "can be created in one of two ways, 1) by an independent source such as state law securing certain benefits; or 2) by a clearly implied promise of continued employment." *Phelan v. City of Chicago*, 347 F.3d 679, 681 (7th Cir. 2003) (internal quotation marks omitted). Due-process claims in the context of public employment require an entitlement to continued employment; more specifically, the plaintiff must have "a legitimate claim of entitlement not to lose a valuable governmental benefit except for cause." *Lee v. County of Cook*, 862 F.2d 139, 141 (7th Cir. 1988) (quotation marks omitted). A collective-bargaining agreement can

create an employment contract—and thus a promise of continued employment—in some cases. *Krieg v. Seybold*, 481 F.3d 512, 519-20 (7th Cir. 2007); *see also Young v. N. Drury Lane Prods.*, 80 F.3d 203, 206 (7th Cir. 1996) (noting that a labor agreement is not an employment contract). When a plaintiff alleges that the due-process entitlement arises from a collective-bargaining agreement, he must identify specific terms of the agreement that contained a promise of continued employment. *Krieg*, 481 F.3d at 520; *see also Minch v. City of Chicago*, 486 F.3d 294, 302 (7th Cir. 2007).

Palka did plead that he was a member of a collective-bargaining unit but did not identify a provision in the collective-bargaining agreement that could feasibly give rise to a constitutionally protected property interest in continued employment. *See Krieg*, 481 F.3d at 520. The part of his complaint that comes closest is the allegation that he was scheduled to appear before the Merit Board on disciplinary charges; only tenured employees would be entitled to a hearing before this board. We will assume without deciding that this allegation is sufficient and move on to consider whether Palka's allegations state a cognizable claim for violation of his right to procedural due process.

As we have noted, Palka has alleged he was deprived of due process prior to both his suspension and resignation. Regarding the former, Palka was suspended with pay, and a suspension with pay does not trigger due-process protections unless the suspension imposes a substantial indirect economic effect on the plaintiff. *Town-*

*send v. Vallas*, 256 F.3d 661, 676 (7th Cir. 2001) (teacher's loss of coaching income after suspension with pay not sufficient to implicate due-process protections). Palka has not claimed that he suffered *any* indirect economic consequences as a result of his suspension with pay. Accordingly, to the extent that he claims he was deprived of due process prior to his suspension, he has not stated a valid constitutional claim.

Palka also alleged that he was deprived of due process prior to his resignation; this claim rests on his contention that his resignation was involuntary. A public employee who voluntarily resigns cannot complain about a lack of due process, but an "involuntary" resignation may in certain circumstances form the basis of a due-process claim. *Dusanek v. Hannon*, 677 F.2d 538, 543 (7th Cir. 1982). Two types of involuntary resignation may qualify—constructive discharge and coerced resignation. *Patterson v. Portch*, 853 F.2d 1399, 1405-06 (7th Cir. 1988). Constructive discharge occurs when an employer makes employment so unbearable that an employee resigns; coerced resignation is characterized by the presence of a Hobson's choice in which the employee must resign or suffer severe consequences, such as facing criminal charges. *See id.* Palka's claim falls in the latter category; he alleges that the defendants forced him to choose between resigning to protect his retirement benefits or clearing himself before the Merit Board.

No doubt Palka was confronted with a difficult choice when the disciplinary charges were lodged against him and the Merit Board hearing loomed. He could retire

with full benefits or appear before the Board and potentially be vindicated; the latter option, however, obviously risked termination and loss of his benefits if the charges were substantiated. But this is not the kind of choice that makes an otherwise voluntary resignation involuntary. The Merit Board provides adequate procedural protections to Cook County employees facing disciplinary charges, and its formal procedures were underway when Palka chose to resign. The Merit Board's disciplinary process satisfies the County's procedural due-process obligations, and the County and its officials cannot be held liable when an employee chooses not to avail himself of its protections. *See Dusanek*, 677 F.2d at 543 ("[A] state cannot be held to have violated due process requirements when it has made procedural protection[s] available and the plaintiff has simply refused to avail himself of them."). That Palka decided to resign rather than risk an unfavorable Merit Board decision does not make his resignation involuntary. The district court was right to dismiss his procedural due-process claim.

The court also properly dismissed Palka's substantive due-process claim. This sort of claim is limited to violations of fundamental rights, *see Belcher v. Norton*, 497 F.3d 742, 753 (7th Cir. 2007), and employment-related rights are not fundamental; an alleged wrongful termination of public employment is not actionable as a violation of substantive due process unless the employee also alleges the defendants violated some other constitutional right or that state remedies were inadequate, *Montgomery v. Stefaniak*, 410 F.3d 933, 939 (7th

Cir. 2005). Palka has not pleaded an additional constitutional violation or claimed that state-law remedies were inadequate. He therefore has failed to state an actionable substantive due-process claim.

Palka's substantive due-process claim also fails to the extent that he bases it on the conduct of the Police Department officials. The Due Process Clause protects citizens from abuses of power by executive officials—including law-enforcement officers—but official misconduct will rise to the level of a constitutional violation only if it shocks the conscience. *Russ v. Watts*, 414 F.3d 783, 789 (7th Cir. 2005); *see also County of Sacramento v. Lewis*, 523 U.S. 833, 846-47 (1998). Palka contends that the police officers' investigation—tracing the phone call to the school, their use of the "Leads System," and the fact that they traveled outside their jurisdiction to track him down at his house at night—subverted internal Police Department rules and therefore qualifies as conscience-shocking official misconduct. It does not. The threshold for this kind of due-process claim is high; many forms of governmental misconduct are excluded. *Tun v. Whitticker*, 398 F.3d 899, 903 (7th Cir. 2005) ("It is one thing to say that officials acted badly, even tortiously, but—and this is the essential point—it is quite another to say that their actions rise to the level of a constitutional violation*."); Kernats v. O'Sullivan*, 35 F.3d 1171, 1175 (7th Cir. 1994) ("Of course, every official abuse of power, even if unreasonable, unjustified, or outrageous, does not rise to the level of a federal constitutional deprivation."). Accepting (as we must) Palka's allegations as true, he has failed to state a cognizable substantive due-process claim.

**B.  Occupational-Liberty Claim**

Palka has also alleged a violation of his interest in occupational liberty. This claim appears to rest on Tobias's complaint to the Sheriff's Department and the County's failure to give him a retirement badge and firearms credentials following his resignation. An occupational-liberty claim may arise when, after an adverse employment action, a public employer stigmatizes the employee by making public comments impugning his good name, honor, or reputation or imposes a stigma that forecloses other employment opportunities. *Bd. of Regents v. Roth*, 408 U.S. 564, 573-74 (1972). Under this doctrine, a plaintiff must plead that (1) the defendant made stigmatizing comments about him; (2) those comments were publicly disclosed; and (3) he suffered a tangible loss of other employment opportunities as a result of the public disclosure. *Townsend*, 256 F.3d at 669-70. The public-disclosure element requires that the defendant actually disseminate the stigmatizing comments in a way that would reach potential future employers or the community at large. *Ratliff v. City of Milwaukee*, 795 F.2d 612, 627 (7th Cir. 1986) (no public disclosure and therefore no constitutional violation where communications regarding reasons for discharge were disseminated internally); *see also Johnson v. Martin*, 943 F.2d 15, 16-17 (7th Cir. 1991) (same).

Palka alleged that the complaint Tobias filed with the Sheriff's Department falsely asserted that he engaged in criminal conduct and that his failure to receive a retirement badge and firearms credentials upon his resignation exacerbated the impression left by the false allega-

tions. But Tobias's complaint was not publicly disclosed; Tobias's stigmatizing allegations were made only to the Sheriff's Department, Palka's employer, and not a potential future employer. That the allegations were relayed to the State's Attorney's Office does not make a difference. The State's Attorney's Office has an obligation of confidentiality, and there is no allegation that Tobias's complaint reached potential future employers. An occupational-liberty claim requires "that the circumstances made it virtually impossible for [the plaintiff ] to find a new position in his chosen profession." *Lashbrook v. Oerkfitz*, 65 F.3d 1339, 1349 (7th Cir. 1995) (citing *Ratliff*, 795 F.2d at 625). The district court properly dismissed this claim.

### C. *Monell* Claim

Finally, Palka has asserted claims against the City and County under *Monell v. Department of Social Services*, 436 U.S. 658 (1978). But because his complaint fails to state a claim for any constitutional violation, the City and County cannot be held liable; a *Monell* claim requires a municipal policy or practice that results in a constitutional deprivation. *Christensen v. County of Boone*, 483 F.3d 454, 465 (7th Cir. 2007) ("Because we have determined that all of plaintiffs' claims under federal law were properly dismissed, there can be no § 1983 liability for Boone County either.").

AFFIRMED.