In the

# United States Court of Appeals

### For the Seventh Circuit

No. 18-2054

VICTORIA WEILAND and DEANNA CHRONES,

*Plaintiffs-Appellees,*

*v.*

SHAWN LOOMIS,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 17 C 6111 — **Amy J. St. Eve**, *Judge.*

ARGUED SEPTEMBER 6, 2019 — DECIDED SEPTEMBER 18, 2019

Before EASTERBROOK, KANNE, and BRENNAN, *Circuit Judges.*

EASTERBROOK, *Circuit Judge.* Tywon Salters, a pretrial detainee in Kane County, Illinois, swallowed some cleaning fluid, apparently in an effort to commit suicide. He was taken to Delnor Community Hospital for treatment. Guards were instructed to keep him shackled. Shawn Loomis, one of those guards, disobeyed that order when Salters claimed that he needed to use the bathroom. Salters grabbed

Loomis's gun and escaped. While Salters terrorized the Hospital's staff, patients, and visitors, Loomis ran away and hid. Salters took nurses hostage at gunpoint and assaulted two of them. After three hours a SWAT team cornered Salters and killed him. This appeal arises from claims under 42 U.S.C. §1983 by two persons at the Hospital who were frightened but not physically injured. (Other claims have been settled.)

The defendants in the suit include Loomis, Kane County (which employed Loomis as a correctional officer), Delnor Hospital, and Apex3 Security, LLC, which the Hospital hired to provide security for its premises. The appeal, however, concerns only Loomis, who moved to dismiss the complaint on the ground of qualified immunity. A public employee is entitled to immunity in §1983 litigation unless, at the time of the events in question, "clearly established" law would have made apparent to any public employee that his or her acts violated the Constitution. See, e.g., *Escondido v. Emmons*, 139 S. Ct. 500 (2019). Loomis argued that it had not been (and still is not) clearly established that permitting a prisoner to escape violates the Constitution. He relied principally on *DeShaney v. Winnebago County Department of Social Services*, 489 U.S. 189 (1989), which holds that the Constitution, as a charter of negative liberties, does not require the govern-ment to protect the public from private predators—and it was Salters, not Loomis, who inflicted plaintiffs' injuries.

The district judge first held that the complaint presents a valid claim for liability under what has come to be called the "state-created danger exception" to *DeShaney*. *Does I–IV v. Kane County*, 308 F. Supp. 3d 960, 967–71 (N.D. Ill. 2018). Under this doctrine, the judge wrote, a public employee is

liable for increasing the danger to which other persons are exposed. Loomis did not create danger by transferring Salters to the Hospital; that decision was made by others. So too was the decision that Loomis carry a weapon in a situation that posed a risk if he lost control of his sidearm. But Loomis did increase the danger by removing Salters from his shackles, negligently permitting him to get the gun, and running away. Plaintiffs do not allege that Loomis *intended* harm to the Hospital's staff, patients, and visitors—he appears, instead, to be a feckless coward—but the district judge thought that negligence leading to bystanders' danger could support liability. Then, and for essentially the same reasons, the judge rejected Loomis's immunity defense. *Id*. at 971–73. The "state-created danger exception" is established in the Seventh Circuit, the judge observed, and it should have been obvious to any guard that armed prisoners must not be turned loose in hospitals. That was enough, the judge wrote, to make the right "clearly established."

The problem with this reasoning is that it starts and ends at a high level of generality. The "state-created danger exception" to *DeShaney* does not tell any public employee what to do, or avoid, in any situation. It is a principle, not a rule. And it is a principle of liability, not a doctrine (either a standard or a rule) concerning primary conduct. For that one must look elsewhere, but the district judge did not do so. Nor have the plaintiffs.

Citing decisions of this circuit, the district court understood the "state-created danger exception" to *DeShaney* as equivalent to a constitutional rule prohibiting any act, by any public official, that increases private danger. If that were so, however, then *DeShaney* itself is wrongly decided. Joshua

DeShaney was removed from his father's custody and hospitalized as a result of injuries. Joshua's stepmother reported that Randy DeShaney, Joshua's father, regularly abused him physically. After deliberation, state child-welfare officials decided to return Joshua to his father. Randy then beat and permanently injured Joshua. No one could have doubted that the child-welfare officials' decision increased Joshua's danger, compared with his safety in the hospital—indeed, that increase was the foundation of his claim for damages—but the Supreme Court nonetheless held that the Due Process Clause of the Fourteenth Amendment does not require a state to protect its residents from private violence. Other courts cannot create an "exception" to *DeShaney* that contradicts this principle, and as a result we cannot treat the "state-created danger exception" as a rule of primary conduct forbidding any acts by public officials that increase private dangers. (We have a few words toward the end of this opinion about what the "exception" might mean.)

Over and over, the Supreme Court has held that a right is "clearly established" only if it has been "defined with specificity." *Escondido*, 139 S. Ct. at 503. See also, e.g., *Kisela v. Hughes*, 138 S. Ct. 1148, 1152–53 (2018); *District of Columbia v. Wesby*, 138 S. Ct. 577, 590 (2018); *White v. Pauly*, 137 S. Ct. 548, 552 (2017); *San Francisco v. Sheehan*, 135 S. Ct. 1765, 1775–76 (2015); *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2005); *Carroll v. Carman*, 574 U.S. 13, 16–17 (2014); *Wood v. Moss*, 572 U.S. 744, 757–58 (2014); *Plumhoff v. Rickard*, 572 U.S. 765, 778–79 (2014); *Stanton v. Sims*, 571 U.S. 3, 5–6 (2013); *Reichle v. Howards*, 566 U.S. 658, 664 (2012); *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004). These decisions, and more, tell us that a high level of generality won't do.

The district judge resisted the conclusion that "state-created danger" is too general by observing that Loomis's proposal—something like a case establishing how guards must prevent being overpowered by prisoners in hospitals during bathroom breaks—would be too particular. 308 F. Supp. 3d at 972. By insisting on a case identical to the one at hand, public employees could insulate themselves from liability, for every case differs in *some* respect from its predecessors. We agree with the district judge that a search for identity is not required and would be a fool's errand. A principle can be clearly established without matching a later case's facts. The search is for an *appropriate* level of generality, not the most particular conceivable level. And the level of generality is appropriate when it establishes the rule in a way that tells a public employee what the Constitution requires in the situation that employee faces. See, e.g., *Mullenix*, 136 S. Ct. at 308–09 (citing other cases).

Consider this possible rule: "The Constitution (through the Due Process Clause) requires guards to prevent prisoners from escaping." Loomis had to know that keeping Salters under control was his responsibility as a matter of Illinois law and his employer's instructions; this hypothetical rule would have told him that the Constitution, too, requires this. It would not be necessary for the rule to say anything about hospitals, or toilets, or how strong a prisoner may be. But this is only a hypothetical, because other litigants have argued that the Constitution requires guards to prevent escapes, and every appellate court that has considered the possibility has rejected it as incompatible with *DeShaney*. See, e.g., *Rios v. Del Rio*, 444 F.3d 417 (5th Cir. 2006); *Davis v. Fulton County*, 90 F.3d 1346 (8th Cir. 1996). See also *Commonwealth Bank & Trust Co. v. Russell*, 825 F.2d 12 (3d Cir. 1987)

(same outcome before *DeShaney*). It is not possible to say that a constitutional obligation to keep a prisoner under control has been "clearly established" when every appellate court that has addressed the question has held that the proposed obligation does not exist.

Because "clearly established" law does not support the §1983 claim against Loomis, we need not decide whether we agree with these decisions. See *Pearson v. Callahan*, 555 U.S. 223, 231–43 (2009). But it is apt to add that we also have not approved the district court's view that the complaint states a good constitutional claim. Plaintiffs allege that Loomis was incompetent, but the Due Process Clause generally does not condemn official negligence. See *Daniels v. Williams*, 474 U.S. 327 (1986). Plaintiffs depict themselves as frightened but not otherwise injured, and, even in the law of torts, negligent actors are not liable for conduct that threatens bodily harm but produces only emotional distress. *Restatement (Second) of Torts* §436A (1965). And then there is *DeShaney*.

In recent years the "state-created danger exception" has been treated as if it were a rule of common law. It has been elaborated and turned into a "three-part test":

> First, the state, by its affirmative acts, must create or increase a danger faced by an individual. Second, the failure on the part of the state to protect an individual from such a danger must be the proximate cause of the injury to the individual. Third, the state's failure to protect the individual must shock the conscience.

*Johnson v. Rimmer*, No. 18-1321 (7th Cir. Aug. 30, 2019), slip op. 23, quoting from *King v. East St. Louis School District*, 496 F.3d 812, 817–18 (7th Cir. 2007) (internal citations and quotation marks deleted). None of these elements has its provenance in *DeShaney*.

Every once in a while, a court should step back and ask whether local jurisprudence matches the instructions from higher authority. If taken literally, the approach that *Johnson* attributes to *King* would have justified liability in *DeShaney*. The Justices themselves saw the matter differently. They hinted that the Constitution *might* support liability when a state has a duty that "arises not from the State's knowledge of the individual's predicament or from its expressions of intent to help him, but from the limitation which it has imposed on his freedom to act on his own behalf." 489 U.S. at 200. That is why the Constitution requires the state to supply prisoners with medical care and protect them from each other; having disabled resort to self-help (or to the market in private services), the state must provide a substitute. Several decisions in this circuit find liability outside of prisons when the state has disabled or undermined self-help or sources of private assistance. See, e.g., *Paine v. Cason*, 678 F.3d 500, 510–11 (7th Cir. 2012); *Reed v. Gardner*, 986 F.2d 1122 (7th Cir. 1993). Those cases have a footing in *DeShaney* that the "three-part test" lacks.

Other circuits have their own approaches. *Estate of Romain v. Grosse Pointe Farms*, 2019 U.S. App. LEXIS 24164 (6th Cir. Aug. 14, 2019), discusses the "three-part test" (with parts different from those of *Johnson* and *King*) that the Sixth Circuit uses to evaluate claims of state-created danger. Judge Murphy filed a concurring opinion, 2019 U.S. App. LEXIS 24164 at *14–23, questioning whether the Sixth Circuit's approach can be reconciled with *DeShaney* and suggesting that it be refocused on the question whether the state has impaired the plaintiff's powers of self-help or ability to obtain help from others. All three members of the panel joined this opinion, making it an alternate majority opinion.

*Estate of Romain* did not need to decide whether the Sixth Circuit's approach should be revised, just as we do not need to decide whether *Johnson* and *King* are compatible with *Paine*, *Reed*, and *DeShaney*. These subjects should be presented for consideration in some future case, when the outcome may turn on the difference. For now, it is enough to say that even if Loomis is civilly and criminally liable as a matter of Illinois law, he is entitled to qualified immunity from a claim based on the federal Constitution, so the district court's decision is

REVERSED.