In the

# United States Court of Appeals
### For the Seventh Circuit

---

No. 20-1279

KIMBERLY NELSON,

*Plaintiff-Appellant,*

*v.*

CITY OF CHICAGO, *et al.*,

*Defendants-Appellees.*

---

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:17-cv-05740 — **Andrea R. Wood**, *Judge.*

---

ARGUED MARCH 2, 2021 — DECIDED MARCH 25, 2021

---

Before RIPPLE, HAMILTON, and KIRSCH, *Circuit Judges.*

HAMILTON, *Circuit Judge.* Plaintiff Kimberly Nelson is a
Chicago police officer who developed post-traumatic stress
disorder after responding to an armed robbery. She alleges
that a supervising sergeant failed to intervene when a dis-
patcher ignored her calls for back-up. She alleges that another
sergeant edited her incident report to remove complaints
about the failures to respond to her calls for back-up. In de-
ciding this appeal, we assume that the sergeants acted or

failed to act as Officer Nelson alleges, and we assume that they acted contrary to police department policy. This lawsuit is not about department policy, however. Officer Nelson seeks to recover damages under 42 U.S.C. § 1983 on the unusual theories that the sergeants violated her substantive and procedural due process rights under the Fourteenth Amendment to the United States Constitution. She also seeks to hold the City of Chicago liable as the sergeants' employer. The district court dismissed Officer Nelson's third amended complaint for failure to state a claim. We affirm.

Because we review a dismissal on the pleadings, we accept as true the factual allegations of the operative complaint without vouching for their truth. E.g., *Word v. City of Chicago*, 946 F.3d 391, 393 (7th Cir. 2020). In December 2016, Officer Nelson responded to a report of an armed robbery of a Federal Express truck in a high-crime area of Chicago. Officer Nelson alleges that the radio dispatcher ignored her repeated emergency calls for further information and assistance. She felt abandoned and was concerned for her safety.

The shift sergeant on duty at the time, defendant Virginia Bucki, was responsible for listening to the radio transmissions and contacting the dispatcher if that person failed to respond to calls. Officer Nelson alleges that Sergeant Bucki did not intervene when the dispatcher ignored her repeated requests for help. After her shift ended, Officer Nelson confronted Sergeant Bucki. According to Officer Nelson, Sergeant Bucki denied wrongdoing and refused to investigate why the dispatcher ignored Nelson.

In her incident report, Officer Nelson complained about the dispatcher's failure to respond to her calls. About three months later, though, she discovered that Sergeant Roy Boffo

had edited the report to remove her complaints. Where Officer Nelson had written "I then called 'Emergency' with no response, '652 Emergency' again with no response," Sergeant Boffo changed the text to read: "Awaiting further information from dispatchers, RO [Officer Nelson] viewed Fedex worker running." We assume here that Sergeant Boffo violated department procedures by amending Officer Nelson's report without consulting her.

After her abandonment during the robbery incident, Officer Nelson developed PTSD, which she alleges was later aggravated by the stress of learning that Sergeant Boffo had edited her report. She has been unable to work since then, but she remains employed by the police department and receives a disability benefit for a duty-related injury. See *Nelson v. Retirement Bd. of Policemen's Annuity & Benefit Fund of City of Chicago*, 2020 IL App (1st) 192032-U, 2020 WL 1975414.

Nelson filed charges of race and sex discrimination with the EEOC and Illinois Department of Human Rights in 2017. After receiving a right-to-sue notice, she filed this federal suit, originally alleging discrimination under the Americans with Disabilities Act. In her pro se complaint, she alleged that Sergeants Bucki and Boffo and others failed to reasonably accommodate her disability, failed to stop "harassment," "engaged in malicious misconduct" by ignoring her emergency calls but not those of other officers, and altered her incident report. She then retained counsel and amended her complaint. Instead of alleging employment discrimination, the amended complaint asserted claims against Sergeants Bucki and Boffo, as well as the City of Chicago (on a doomed theory of respondeat superior) for violating her constitutional rights.

After a status hearing, Officer Nelson amended her complaint again, asserting that Sergeant Bucki violated her substantive due process rights by failing to protect her from danger and her procedural due process rights by causing her PTSD and thereby depriving her of a property interest in her job. Officer Nelson alleged that Sergeant Boffo engaged in conscience-shocking behavior when he altered her report, also violating her right to substantive due process of law. She also alleged that the City of Chicago should be liable under a respondeat superior theory because the sergeants were working within the scope of their employment when they violated her rights.

The defendants moved to dismiss the second amended complaint under Federal Rule of Civil Procedure 12(b)(6), and the district court granted the motion. The dismissal was without prejudice, giving Officer Nelson one more chance to file an amended complaint that would remedy the deficiencies identified by the court. See generally *Runnion v. Girl Scouts of Greater Chicago & Nw. Ind.*, 786 F.3d 510, 519–20 (7th Cir. 2015) (district court should ordinarily give plaintiff an opportunity to cure perceived deficiencies in a complaint before dismissing with prejudice).

Officer Nelson's third amended complaint closely resembled the previous versions. The primary additions were extensive blocks of quoted narrative seemingly drawn directly from Officer Nelson's correspondence with her attorney. She also reiterated the respondeat superior claim verbatim, despite the court having pointed out that respondeat superior does not apply under section 1983 and that the only possible avenue to municipal liability would be under *Monell v. De-*

*partment of Social Services*, 436 U.S. 658, 690–91 (1978). The defendants again moved to dismiss under Rule 12(b)(6). This time, the court dismissed Nelson's complaint with prejudice, observing that despite three amendments and guidance from the court, she had still failed to state a claim.

On appeal, Officer Nelson contends that her third amended complaint cured the earlier defects and stated viable due process claims against the two sergeants as well as the City of Chicago. We review a dismissal under Rule 12(b)(6) de novo. See *Campos v. Cook County*, 932 F.3d 972, 974 (7th Cir. 2019). The complaint needed to set forth a claim that is "plausible on its face," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), that is, to contain "enough facts to draw the reasonable inference that the defendant is liable." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Officer Nelson argues that we should apply the liberal amendment standard of Federal Rule of Civil Procedure 15(a)(2). That would be correct if the district court had dismissed with prejudice without allowing her an opportunity to amend, e.g., *Runnion*, 786 F.3d at 519–20, but that is not what happened. Having provided "multiple opportunities" to amend, the court had no duty to offer more. See *Lee v. Northeastern Illinois Reg'l Commuter R.R. Corp.*, 912 F.3d 1049, 1053 (7th Cir. 2019). And even on appeal Officer Nelson has not identified any further amendments she could make to assert viable constitutional claims.

Officer Nelson's due process claims reflect a profound misunderstanding about the scope of the Due Process Clause of the Fourteenth Amendment and how it applies to public employees who encounter dangers in their work. Officer Nel-

son's complaint alleges that she was traumatized by a dangerous situation she encountered while on duty. Her allegations remind all of us of the dangers police officers face and the courage the job requires. Officer Nelson has not, however, pleaded facts that entitle her to proceed against any defendant for violating her constitutional due process rights.

The essence of Officer Nelson's complaint against Sergeant Bucki is that the sergeant ignored her calls for assistance, making her response to the armed robbery call even more dangerous. Officer Nelson tried to state a claim under the "state-created-danger" exception to the general rule that the Due Process Clause does not protect a person from harm from a private actor. The claim fails. It does not allege an affirmative action on the part of Sergeant Bucki, nor does it allege conduct sufficiently egregious to violate due process.

To allege a viable substantive due process claim, Officer Nelson would need to allege conduct under color of state law that "violated a fundamental right or liberty" and was so "arbitrary and irrational" as to "shock the conscience." *Campos*, 932 F.3d at 975; *GEFT Outdoors, LLC v. City of Westfield*, 922 F.3d 357, 368 (7th Cir. 2019), citing *County of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998). Substantive due process protects only "those fundamental rights and liberties which are, objectively, 'deeply rooted in this Nation's history and tradition,'" and must be subject to "careful description." *Washington v. Glucksberg*, 521 U.S. 702, 720–21 (1997). Officer Nelson has never pinpointed what fundamental interest she seeks to vindicate, and none of the interests identified by the Supreme Court are at issue here. See *id.* at 719–20 (collecting cases). In connection with her procedural due process claim, Officer Nelson asserts that she has a property interest in her job. But

if she intended her job to be a basis of her substantive due process claim as well, that theory fails. Employment, including public employment, is not a fundamental right. *Campos*, 932 F.3d at 975; *Palka v. Shelton*, 623 F.3d 447, 453 (7th Cir. 2010).

Even if we assumed that a fundamental right was at stake, Officer Nelson faces a high bar in alleging conduct that shocks the conscience, one that excludes "many forms of governmental misconduct." *Palka*, 623 F.3d at 454. Her allegations would have to permit the inference that Sergeants Bucki and Boffo not only acted "badly, even tortiously," *id.*, but that they "acted with a *mens rea* approaching that of criminal recklessness." *Hess v. Board of Trustees of Southern Illinois Univ.*, 839 F.3d 668, 678–79 (7th Cir. 2016). She did not do so. Officer Nelson alleged that Sergeant Bucki was apathetic, ignoring one of her job duties of listening to the dispatcher. Her most pointed accusation against Sergeant Bucki is "[i]nattention to duty." Negligence is a state of mind that falls well short of shocking the conscience so as to support a substantive due process claim. See *Lewis*, 523 U.S. at 849; *Weiland v. Loomis*, 938 F.3d 917, 920 (7th Cir. 2019).

Officer Nelson asserts for the first time on appeal that Sergeant Bucki ignored her dispatches intentionally. That argument was forfeited by the failure to raise it in the district court. *Soo Line R.R. Co. v. Consolidated Rail Corp.*, 965 F.3d 596, 602 (7th Cir. 2020). In any event, our precedents show that the Due Process Clause has little to say about how police supervisors oversee day-to-day and moment-to-moment police work, with the possible exception of conduct deliberately intended to harm the injured officer.

We rejected similar "state-created-danger" due process claims by a law enforcement officer in *Witkowski v. Milwaukee County*, 480 F.3d 511 (7th Cir. 2007). Witkowski was a deputy sheriff who helped provide courtroom security for the trial of a dangerous defendant. Superior officers allegedly failed to turn on the defendant's stun-belt. When the defendant was pronounced guilty of the charged murder, he leaped at Deputy Witkowski, grabbed his weapon, and shot him in the leg before being shot and killed by other officers. Witkowski then sued the other officers and the county for due process violations, alleging that the superior officers had acted intentionally or recklessly.

We affirmed dismissal on the pleadings. We explained that the Constitution is a charter of negative liberties and that private violence does not violate the Due Process Clause. *Witkowski*, 480 F.3d at 512, citing *DeShaney v. Winnebago County Department of Social Services*, 489 U.S. 189 (1989). We also rejected Witkowski's attempt to invoke the state-created-danger qualification to that general principle. The doctrine is narrow, calling for protection "if the state disables people from protecting themselves," such as by arresting or imprisoning them or putting them in foster care. *Witkowski*, 480 F.3d at 513. That state-created-danger doctrine does not apply to a public employee who has agreed to do dangerous work, whether the dangers are posed by animate or inanimate causes. See *Collins v. City of Harker Heights*, 503 U.S. 115, 125–27 (1992) (affirming dismissal of due process claims by widow of city worker who was asphyxiated during underground utility work, despite allegations of deliberate indifference); *Witkowski*, 480 F.3d at 513 (described above); *Walker v. Rowe*, 791 F.2d 507, 510 (7th Cir. 1986) (reversing jury verdict in favor of prison guards and widows of guards hurt and

killed in prison uprising even if supervisors were grossly neg-
ligent in failing to protect against violence by prisoners).

Here, the danger was created by an armed robber, not by
the government, so it is not covered by the doctrine.
See *Witkowski*, 480 F.3d at 513. Under the state-created-danger
theory, whether Sergeant Bucki was deliberately indifferent
to risks to Officer Nelson is irrelevant. "Disregarding a known
risk to a public employee does not violate the Constitution
whether or not the risk comes to pass." *Id.* at 514.[1]

Officer Nelson's allegations that Sergeant Boffo altered her
report also cannot support a substantive due process claim.
We assume that this alleged conduct was unprofessional and
contrary to department policies, but it falls far short of con-
science-shocking abuse of government power. The startling
notion that a public employee has a substantive due process
right in how her performance was recorded in official files

---

[1] For other cases brought by public employees asserting state-created-
danger claims, see generally *Slaughter v. Mayor & City Council of Baltimore*,
682 F.3d 317, 321–22 (4th Cir. 2012) (affirming dismissal of substantive due
process claim by estate of firefighter who died in training exercise); *Jackson
v. Indian Prairie School Dist. 204*, 653 F.3d 647, 655–56 (7th Cir. 2011) (af-
firming summary judgment for defendants on special education teacher's
substantive due process claim arising from student's assault); *Hunt v. Syc-
amore Community School Dist. Bd. of Education*, 542 F.3d 529 (6th Cir. 2008)
(affirming summary judgment for defendants in substantive due process
suit by teacher's aide who was assaulted by student); *Kaucher v. County of
Bucks*, 455 F.3d 418, 424–25, 431 (3d Cir. 2006) (affirming summary judg-
ment for defendants on corrections officer's substantive due process claim
that dangerous conditions at jail caused dangerous infection); cf. *Pauluk v.
Savage*, 836 F.3d 1117 (9th Cir. 2016) (reversing denial of qualified immun-
ity for defendants on substantive due process claim by estate of state em-
ployee who allegedly died from exposure to deadly mold in work envi-
ronment).

seems to be without precedent. Cf. *Goros v. County of Cook*, 489 F.3d 857, 860 (7th Cir. 2007) (substantive due process did not apply to department's practice of "resetting" officer's anniversary upon promotion, affecting timing and eligibility for raises). Officer Nelson alleges that seeing the altered report months later "aggravated her PTSD and caused her much anguish," but emotional distress alone does not support a constitutional tort under circumstances comparable to this case. *Weiland*, 938 F.3d at 920.

Officer Nelson's procedural due process claim also fails. We assume that she had a property interest in retaining her job, e.g., *Word*, 946 F.3d at 395, but she does not allege that she lost her job, that the Chicago Police Department offered insufficient procedural protections, or that Sergeant Bucki interfered with her attempts to gain redress. See *Michalowicz v. Village of Bedford Park*, 528 F.3d 530, 534 (7th Cir. 2008). She was not denied any notice of an intentional deprivation of her job or an opportunity to be heard. Officer Nelson was able to consult with a sergeant and a lieutenant, her union, the Employee Assistance Plan, the Internal Affairs department, and the Retirement Board, and she never challenged the "fundamental fairness of the remedies they afforded her." *Calderone v. City of Chicago*, 979 F.3d 1156, 1167 (7th Cir. 2020). The impractical idea that plaintiff was entitled to notice and an opportunity to be heard—the core of the right to due process—*before* Sergeant Bucki failed to respond to calls for help, resulting in PTSD, runs directly into the doctrine of *Parratt v. Taylor*, 451 U.S. 527, 541 (1981) (no need for pre-deprivation hearing where deprivation is result of random and unauthorized action). See, e.g., *Bradley v. Village of University Park*, 929 F.3d 875, 886 (7th Cir. 2019) (explaining practical underpinnings of *Parratt* rule).

Officer Nelson took disability leave, and she has identified no defect in the procedures used to determine those benefits, including a decision in her favor by the Illinois Appellate Court finding that her disability was duty-related. *Nelson v. Retirement Bd. of Policemen's Annuity & Benefit Fund of City of Chicago*, 2020 IL App (1st) 192032-U, 2020 WL 1975414.

Finally, even if Officer Nelson had alleged a viable claim against an individual defendant, the district court properly rejected her claim against the City of Chicago as a matter of law. Section 1983 "does not incorporate the common-law doctrine of respondeat superior." *First Midwest Bank, Guardian of Estate of LaPorta v. City of Chicago*, 988 F.3d 978, 986 (7th Cir. 2021). The city could not be liable simply because the alleged wrongdoers were its employees acting within the scope of their employment. The city could be liable under *Monell*, but only if the "municipality itself" violated Officer Nelson's federal rights or was the "moving force" for the violation. *LaPorta.* 988 F.3d at 987. Officer Nelson never tied Sergeant Bucki's or Boffo's actions to a "policy or custom" of the department, *id.* at 986, and therefore gave the district court no basis to infer that the city was responsible for any constitutional violation.

Officer Nelson attempts to allege a pattern of police misconduct by describing an unrelated incident in which a non-defendant sergeant made an outrageous remark to her, and five other court cases in which police officers committed, or covered up misconduct. But none of these incidents were comparable to the alleged actions of Sergeants Bucki or Boffo, nor could they be said to be related to them in any way. The allegations fall far short of the "*specific* pattern or series of in-

cidents [required] to support the general allegation of a custom or policy." See *Hollins v. City of Milwaukee*, 574 F.3d 822, 827 (7th Cir. 2009) (emphasis added). Even if Nelson had addressed *Monell*, her claim against the city would have faltered on the absence of an "underlying constitutional violation" by the sergeants, which "automatically preclude[s] a finding of *Monell* liability." *Donald v. Wexford Health Sources, Inc.*, 982 F.3d 451, 463 (7th Cir. 2020) (citation omitted).

The judgment of the district court is

AFFIRMED.