In the

# United States Court of Appeals
## For the Seventh Circuit

_____

No. 23-1928

PHILLIP ROBBIN,

*Plaintiff-Appellant,*

*v.*

CITY OF BERWYN, *et al.,*

*Defendants-Appellees.*

_____

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 22-cv-05435 — **Ronald A. Guzmán**, *Judge.*

_____

ARGUED APRIL 3, 2024 — DECIDED JULY 18, 2024

_____

Before ST. EVE, KIRSCH, and LEE, *Circuit Judges.*

LEE, *Circuit Judge.* Phillip Robbin was removing a tree from
a residential lot in the City of Berwyn when he was confronted
by Sarah Lopez, a city inspector. Lopez was upset that Robbin
was blocking the alley, and she started to berate him, calling
him racial slurs. Appalled, Robbin demanded that the City
discipline Lopez, and, when the Mayor denied his request,
Robbin sued the City, the Mayor, and Lopez, alleging viola-
tions of his substantive due process rights under the

Fourteenth Amendment as well as state law. The district court dismissed Robbin's complaint under Federal Rule of Civil Procedure 12(b)(6), determining that he failed to state a federal claim, and declined to exercise supplemental jurisdiction over the state law claims. We affirm.

## I.  Background

Only a brief recitation of the facts is necessary. In May 2022, Robbin was removing a tree from a home located in Berwyn when Lopez, a Berwyn blight inspector, approached him, shouting racial epithets. Lopez was upset that Robbin had parked in an alley to remove the tree and called him a "fucking n —" at least four times during the confrontation. Eventually, the police arrived and questioned Robbin and Lopez.

In the aftermath, Robbin submitted a FOIA request for the police report, which the City denied. In a subsequent meeting, Berwyn's Mayor, Robert Lovero, told Robbin that Lopez was verbally reprimanded but would not be terminated. The Berwyn Police Department also informed Robbin that Lopez would not be charged with a crime because witnesses had "changed their stories." After a local news report on the incident and pressure from the community, Lopez resigned from her position (although the Mayor would release a statement that he had fired her).

Robbin then sued Berwyn, Lovero, and Lopez under 42 U.S.C. § 1983 for violating his Fourteenth Amendment substantive due process rights (Count I). He also brought state law claims, alleging violations of the Illinois Hate Crime statute, 720 ILCS 5/12-7.1 (Count II), intentional infliction of emotional distress (Count III), and indemnification (Count IV).

Defendants filed a motion to dismiss, which the court granted in its entirety. Starting with his § 1983 claim, the district court found that Robbin failed to allege a violation of a fundamental right and conduct that shocked the conscience, dooming his claim. With only state law claims remaining, the district court declined to exercise supplemental jurisdiction. This appeal followed.

## II. Discussion

"We review a dismissal under Rule 12(b)(6) de novo." *Nelson v. City of Chicago*, 992 F.3d 599, 603 (7th Cir. 2021). "In order to survive a motion to dismiss on the pleadings, the complaint must 'contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Flores v. City of South Bend*, 997 F.3d 725, 728–29 (7th Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). On appeal, Robbin maintains that his complaint raises a cognizable substantive due process claim.[1]

"A person seeking relief under section 1983 for a violation of h[is] Fourteenth Amendment right to substantive due process faces a difficult task." *Id.* at 729. "[T]he scope of substantive due process is very limited" and courts are "reluctant to expand the concept …." *Campos v. Cook County*, 932 F.3d 972, 975 (7th Cir. 2019) (alteration in original) (citations and internal quotation marks omitted). "Substantive due process claims can address harmful, arbitrary acts by public officials." *Geinosky v. City of Chicago*, 675 F.3d 743, 750 (7th Cir. 2012). "But such claims must meet a high standard, even when the alleged conduct was abhorrent, to avoid constitutionalizing

---

[1] Robbin does not challenge the district court's decision to decline to exercise supplemental jurisdiction over his state law claims.

every tort committed by a public employee." *Id.* That high standard requires allegations of "conduct under color of state law that 'violated a fundamental right or liberty' and was so 'arbitrary and irrational' as to 'shock the conscience.'" *Nelson*, 992 F.3d at 604 (quoting *Campos*, 932 F.3d at 975).

Robbin hits an early stumbling block: his complaint fails to allege the violation of a fundamental right. "[T]he Due Process Clause specially protects those fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed." *Washington v. Glucksberg*, 521 U.S. 702, 720–21 (1997) (citations and internal quotation marks omitted).

The list of fundamental rights recognized by the Supreme Court is "a short one." *Park v. Ind. Univ. Sch. of Dentistry*, 692 F.3d 828, 832 (7th Cir. 2012). "[I]n addition to the freedoms expressly protected by the Bill of Rights, … the due process clause [] protect[s] such non-enumerated rights as 'the right to marry, to have children, to direct the education and upbringing of one's children, to marital privacy, to use contraception, [and] to bodily integrity ….'" *Hayden ex rel. A.H. v. Greensburg Cmty. Sch. Corp.*, 743 F.3d 569, 575 (7th Cir. 2014) (quoting *Glucksberg*, 521 U.S. at 720); *see also Glucksberg*, 521 U.S. at 720 (explaining that the Supreme Court has "also assumed, and strongly suggested, that the Due Process Clause protects the additional right to refuse unwanted lifesaving medical treatment"). "The Court called for the 'utmost care' in adding to this short list of fundamental rights, 'lest the liberty protected by the Due Process Clause be subtly transformed into the policy preferences of the Members of [the Supreme] Court." *Hayden*, 743 F.3d at 575 (quoting *Glucksberg*,

521 U.S. at 720). And we "have repeatedly taken note of, and heeded, this advice." *Id.* (collecting cases).

Despite these admonitions, Robbin seeks to add to this exclusive list. He asserts that defendants violated his "right of 'free passage'—to go about his business with dignity and autonomy, to carry out his trade unmolested, to travel locally through public spaces, and to be free of harassment and race-based attacks." We have never recognized a right to movement without harassment as fundamental, and Robbin's authority does not support doing so today.

Robbin relies on Blackstone and a variety of Supreme Court dicta to suggest the existence of a generalized right of free movement.[2] But courts, including ours, have explained

---

[2] Specifically, Robbin cites Blackstone's statement that "personal liberty" includes "*the power of locomotion*, of changing situation, or moving one's person to whatsoever place one's own inclination may direct, *without imprisonment or restraint*." 1 William Blackstone, Commentaries on the Laws of England, 134 (emphasis added). And he relies on dicta suggesting the same. *See Plessy v. Ferguson*, 163 U.S. 537, 557 (1896) (Harlan, J., dissenting) (quoting Blackstone to support that the government cannot, on the grounds of race, prevent a white man and a black man from occupying "the same public conveyance on a public highway"); *Williams v. Fears*, 179 U.S. 270, 274 (1900) ("Undoubtedly the right of locomotion … is an attribute of personal liberty, and the right, ordinarily, of *free transit from or through the territory of any state* is a right secured by the 14th Amendment and by other provisions of the Constitution.") (emphasis added); *Kent v. Dulles*, 357 U.S. 116, 126 (1958) ("Freedom of movement is basic in our scheme of values."); *Aptheker v. Secretary of State*, 378 U.S. 500, 519–20 (1964) (Douglas, J., concurring) ("Freedom of movement, at home and abroad, is important for job and business opportunities—for cultural, political, and social activities—for all the commingling which gregarious man enjoys."); *Papachristou v. City of Jacksonville*, 405 U.S. 156, 164 (1972) (explaining that "wandering or strolling" was historically part of the "amenities of life"); *City of Chicago v. Morales*, 527 U.S. 41, 53–54 (1999)

that reliance on these dicta is misplaced. *See Doe v. City of Lafayette*, 377 F.3d 757, 771 (7th Cir. 2004) (explaining that this case law is inapposite and does not undertake a fundamental rights analysis); *Hutchins v. District of Columbia*, 188 F.3d 531, 536 (D.C. Cir. 1999) (describing why these dicta do not support a fundamental right to free movement).

Even assuming a fundamental right to free movement exists, however, that is not the basis of Robbin's claim. Robbin does not allege that Lopez prevented him from travelling within Berwyn "without imprisonment or restraint." 1 William Blackstone, Commentaries on the Laws of England, 134. He instead alleges that she prevented him from moving and conducting his business *without harassment*.

No authority supports that there is a fundamental right to movement without harassment. To the contrary, we have explained that "[d]efamation is not a deprivation of liberty within the meaning of the due process clause" and neither "is a derogatory racial epithet." *Patton v. Przybylski*, 822 F.2d 697, 700 (7th Cir. 1987); *see also Chavez v. Ill. State Police*, 251 F.3d 612, 646 (7th Cir. 2001) ("While we certainly do not approve of racially insensitive remarks, such comments do not by themselves violate the Constitution."). The use of racial epithets is certainly deplorable, but substantive due process does not protect an individual from facing mere verbal harassment (race-based or otherwise) in public spaces.

---

("We have expressly identified this right to remove from one place to another according to inclination as an attribute of personal liberty protected by the Constitution.") (citation and internal quotation marks omitted). None of his cited authorities, however, consider whether this right is a fundamental right in the substantive due process context.

Robbin's claim fails for another reason—the conduct he asserts does not sufficiently "shock the conscience" to trigger a substantive due process claim. *See Nelson*, 992 F.3d at 604–06. "Determining what constitutes such behavior can be difficult; the ultimate question is whether the conduct is too close to the rack and the screw." *Cairel v. Alderden*, 821 F.3d 823, 833 (7th Cir. 2016) (citation and internal quotation marks omitted). "Under this standard, abuse that is merely tortious or even 'abhorrent' does not offend substantive due process." *Viehweg v. Mount Olive*, 559 F. App'x 550, 552 (7th Cir. 2014) (quoting *Tun v. Whitticker*, 398 F.3d 899, 902 (7th Cir. 2005)).

In fact, behavior that is shocking enough to sustain a substantive due process claim typically involves the use of intentional force against an individual's person or the threat of such force. *See Rochin v. California*, 342 U.S. 165, 172 (1952) (concluding that forcible stomach pumping to retrieve swallowed evidence shocked the conscience); *Wilkins v. May*, 872 F.2d 190, 195 (7th Cir. 1989) (extorting a confession at gunpoint could shock the conscience); *Hess v. Garcia*, 72 F.4th 753, 765–67 (7th Cir. 2023) (determining that sexual assault by a public official shocked the conscience).

By contrast, mere verbal harassment, threats, or annoyances alone fail to clear the high bar. *See, e.g., Geinosky*, 675 F.3d at 750 (explaining that allegations of harassment in the form of twenty-four bogus parking tickets were "troubling" but did not suggest a deprivation that "shocks the conscience"); *GEFT Outdoors, LLC v. City of Westfield*, 922 F.3d 357, 368 (7th Cir. 2019) (holding that a city attorney's threats of arrest "were certainly inappropriate" but "a far cry from the type of conduct recognized as conscience-shocking"); *Christensen v. County of Boone*, 483 F.3d 454, 464–65 (7th Cir. 2007)

(explaining that a police officer's pattern of stalking and harassing a couple was "disreputabl[e] and shameful[]" but did not shock the conscience).

Lopez's use of racial epithets was certainly despicable, and the City's refusal to take immediate action perhaps regrettable, but even taken together, the conduct that forms the basis of Robbin's § 1983 claim is verbal harassment, however loathsome. It falls far short of the grievous conduct necessary to support a substantive due process claim.

### III. Conclusion

For the reasons explained, the judgment of the district court is AFFIRMED.